Steven LOFTON; Douglas E. Houghton, Jr.; John Doe and John Roe, minor children, by and through their next friend, Timothy Arcaro; Angela Gilmore; Wayne Larue Smith; Daniel Skahen; Brenda Lynn Bradley; and Gregory Dale Bradley, Plaintiffs,

v.

Robert A. BUTTERWORTH, Jr., Attorney General of the State of Florida; Kathleen A. Kearney, Secretary of Florida's Department of Children and Families; Robert Pappas, District Administrator, District X of Florida's Department of Children and Families; and Sara Herald, District Administrator of District XI of Florida's Department of Children and Families, Defendants.

No. 99–10058–Civ–KING.

United States District Court, S.D. Florida.

April 21, 2000.

John Ratliff, Christina A. Zawisza, Nova Southeastern University, Shepard Broad Law Center, Ft. Lauderdale, FL, Michael Adams, Leslie Cooper, American Civil Liberties Foundation, Inc., New York City, Karen Coolman, Ft. Lauderdale, FL, Elizabeth Schwartz, Miami, FL, Andrew Kayton, Miami, FL, for plaintiffs.

Casey Walker, Vero Beach, FL, James Peters, Gerald Curington, Office of the Attorney General, Tallahassee, FL, Samu-

el Chavers, Department of Children and Families, Tallahassee, FL, for defendants.

### *ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS*

JAMES LAWRENCE KING, District Judge.

## I. INTRODUCTION

Plaintiffs challenge the constitutionality of Florida Statute § 63.042(3)[1] barring a homosexual from adopting a child in Florida, invoking federal jurisdiction under 42 U.S.C. §§ 1983 and 1988, 28 U.S.C. §§ 1331 and 1343, and 28 U.S.C. § 2201.

The Defendants, sued in their official capacity as those responsible for enforcing the challenged provision, have moved to dismiss the Complaint pursuant to FED. R.CIV.P. 12(b)(1) and 12(b)(6). The principle thrust of Defendants' motions contend that Plaintiffs lack standing to bring this action. The parties have also thoroughly briefed and argued the constitutional issues involving equal protection, right of privacy, intimate association and family integrity, and substantive due process.

Because the Court has concluded that, with the exception of Plaintiff Steven Lofton, Plaintiffs have failed to establish that they have standing to bring this suit, the constitutional claims (except standing) will be reserved for future consideration.

### The Parties

**The Bradley Plaintiffs.**

Plaintiffs Gregory and Brenda Bradley (The Bradleys) are residents of Nevada, who have a two-year old daughter. (Complaint ¶ 28). The Complaint does not allege, but does fairly imply that the Brad-

leys' daughter lives with them in Nevada. The Bradleys alleged that if both Bradleys predecease their daughter within the next 16 years, it is their "wish" that Plaintiffs Wayne Larue Smith and/or Daniel Skahen would adopt her. (*Id.* at ¶ 29).

Because Smith and Skahen are currently residents of Key West, Florida, however, the Bradleys allege that § 63.042(3) will bar that proposed adoption in violation of The Bradleys' constitutional right to choose the care for their child.

**The Non–Foster Home Plaintiffs.**

Angela Gilmore, Wayne Larue Smith and Daniel Skahen, allege that they "desire to be considered" as adoptive parents. (*Id.* at ¶ 23, 26). They are alleged to be lesbian and gay respectively, and "automatically disqualified" under § 63.402(3). (*Id.* ¶ 23, 16).

Unlike Plaintiff Lofton (discussed below), neither Smith nor Skahen care for any foster children nor have they ever applied to become adoptive parents for any child.

Two of these three Plaintiffs, Smith and Skahen, are the same parties who the Bradleys "wish that in the event of their deaths, their daughter be adopted by Smith and/or Skahen." (*Id.* at ¶ 29). The complaint is silent as to whether Smith and Skahen "desire to be considered" as adoptive parents for a child other than the Bradleys' daughter.

**The Foster Home Plaintiffs.**

Plaintiff Steven Lofton, now a resident of Oregon (Complaint, ¶ 4) has cared for Plaintiff John Doe, now eight, since his infancy. (*Id.* at ¶¶ 7,8). At some time not specified in the Complaint, Lofton applied to adopt Doe, but his application was re-

---

1. F.S. § 63.042. Who may be adopted; who may adopt

(1) Any person, a minor or an adult, may be adopted.

\* \* \* \* \* \*

(3) No person eligible to adopt under this statute may adopt if that person is a homosexual.

jected by the Florida Department of Children and Families because he was disqualified under § 63.042(3), Florida Statutes. (*Id.* at ¶ 11).

For the last year, Lofton has lived in Oregon with Doe pursuant to an authorization under the Interstate Compact on the Placement of Children, § 409.401, Florida Statutes. (*Id.* at ¶ 11).

For his part, Plaintiff John Doe is alleged to have "deep bonds" with Lofton, (*Id.* at ¶ 8), and would be devastated to be separated from him and the rest of the household. (*Id.* at ¶ 13). He sues by and through his next friend, Attorney Timothy Arcaro. (*Id.* at ¶ 14).

A second pair of foster home plaintiffs consists of Plaintiff Douglas E. Houghton, Jr. and his legal ward Plaintiff John Roe, a seven-year-old boy raised by Houghton since Roe was four. (*Id.* at ¶¶ 15–16). Plaintiff Houghton desires to adopt Roe, whose biological father has consented to terminate his parental rights to permit the adoption. (*Id.* at ¶¶ 17–18). And, although he does not allege that he has petitioned to adopt Roe, he alleges that he "would petition the Circuit Court for the Eleventh Judicial Circuit to adopt Roe" but is automatically disqualified under § 63.042(3) from doing so. For his part, Plaintiff John Roe, like Plaintiff John Doe, is alleged to have a "strong bond" with Plaintiff Houghton, who would be devastated to be separated from him. (*Id.* at ¶ 20).

## II. ANALYSIS

Article III § 2 of the United States Constitution limits the jurisdiction of federal courts to actual cases and controversies. The well-recognized doctrine of standing to sue is an important aspect of this case when considering the case and controversy requirement and is founded upon "both constitutional limitations on federal court jurisdiction and the prudential limitations on its exercise." *Warth v. Seldin,* 422 U.S. 490, 498 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975).

Prudential limits on standing include the principle that federal courts should avoid deciding generalized grievances that present "abstract questions of wide public significance," *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 475, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982), be within the "zone of interests" protected by the statute or constitutional guarantee at issue, *id.* (quoting *Association of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970)), and that a plaintiff, even though he may have established an article III case or controversy, assert his own legal rights and interests, not the rights of third parties, *id.* at 474, 102 S.Ct. at 760. *Cone Corp. v. Florida Dept. of Transp.,* 921 F.2d 1190 (11th Cir.1991).

Further defining standing, the Eleventh Circuit in *Cone Corp. supra* said:

"The constitutional aspect of the standing requirement eliminates claims "'in which the plaintiff has failed to make out a case or controversy between himself and the defendant.'" *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979); *Lynch v. Baxley,* 744 F.2d 1452, 1455–56 (11th Cir.1984). The requirement that the individual plaintiff have standing is based on the need "to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)."

Justice Scalia reminds us that "identifying those disputes which are appropriately resolved through the judicial process is the doctrine of standing." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). He goes on to say:

"Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, see *id.*, at 756, 104 S.Ct. at 3327; *Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975); *Sierra Club v. Morton,* 405 U.S. 727, 740–741, n. 16, 92 S.Ct. 1361, 1368–1369, n. 16, 31 L.Ed.2d 636 (1972); and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" *Whitmore,* supra, 495 U.S. at 155, 110 S.Ct. at 1723 (quoting *Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)). Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.,* at 38, 43, 96 S.Ct. at 1924, 1926.

The party invoking federal jurisdiction bears the burden of establishing these elements. See *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 608, 107 L.Ed.2d 603 (1990); *Warth, supra,* 422 U.S. at 508, 95 S.Ct. at 2210."

Each plaintiff must therefore clearly delineate, and ultimately establish, an injury (or threat of injury) that is both real and immediate. It cannot be an injury that is abstract, conjectural, or hypothetical. *California Bankers Assn. v. Shultz,* 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812, (1974). It is the reality of the threat that is relevant to the standing inquiry, not a plaintiff's subjective apprehensions. Simply put, a plaintiff must allege that he has been or will, in the immediate future, be harmed by the challenged statute, not that he or she can imagine circumstances in which they could possibly be affected by the statute.

The element of the standing doctrine requiring the injury, or threat thereof, to be imminent cannot be met by an allegation that the injury may occur at some indefinite future time. This is particular true when the acts necessary to make the injury happen or at least partly within the plaintiff's overall control. See *Lujan supra.*

■ None of the plaintiffs, except Mr. Lofton, have made application to the State of Florida to become adoptive parents or been denied the right to actually adopt a child. Plaintiff LOFTON's claims will be addressed subsequently but, limiting the following analysis to the remaining plaintiffs, it is clear that the Complaint falls short of alleging an actual "injury in fact," the first element of the standing requirement.

The question if imminency is also not plead with the requisite sufficiency, in that the allegations regarding when plaintiffs want to adopt (for the most part) only set forth a vague desire to be considered as adoptive parents at some indefinite time in the future.

Plaintiffs argue futility, in the sense that a requirement that they be compelled to file an application for adoption prior to satisfying the standard doctrine will be meaningless considering that the challenged statute would apply to bar consideration of those applications. Plaintiffs rely upon *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville, Florida,* 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) holding that a plaintiff association had standing to challenge the constitutionality of a city ordinance. The issue was whether white contractors who were challenging the bidding process of the City of Jacksonville according preferential treatment to certain minority-owned busi-

nesses in the award of city contracts, had standing to challenge the ordinances, notwithstanding that they had not submitted a bid for a city contract after the enactment of the ordinances or been denied a contract that was set aside for a qualified minority business enterprise. The Court held:

"When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit that it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

\*      \*      \*      \*      \*      \*

To establish standing, therefore, a party challenging a set-aside program like Jacksonville's need only demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis."

The *Northeastern* case referred to and relied upon *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978) and said:

"Where a twice-rejected white male applicant claimed that a medical school's admissions program, which reserved 16 of the 100 places in the entering class for minority applicants, was inconsistent with the Equal Protection Clause. Addressing the argument that the applicant lacked standing to challenge the program, Justice Powell concluded that the "constitutional requirements of Art. III" had been satisfied, because the requisite "injury" was the medical school's "decision not to permit Bakke to compete for all 100 places in the class, simply because of his race." *Id.*, at 281, n. 14, 98 S.Ct. at 2743, n. 14 (emphasis added) (principal opinion). Thus, "even

if Bakke had been unable to prove that he would have been admitted in the absence of the special program, it would not follow that he lacked standing."

The *Northeastern* case is distinguishable from the case now before the Court. There, the group of white contractors challenging the ordinance were ready, willing, and able to submit bids on city construction contracts. There was no question that they had submitted bids for this type of city construction work in the past and ready to do so in the future. The group had a detailed and documented history of submitting bids for city construction contracts for which they were now to be precluded from so bidding. Here, there is no allegation nor any suggested inference that any of the plaintiffs, except for Mr. Lofton, are presently ready, willing, and able to adopt.

Bakke had applied on two prior occasions and been rejected, for admission to the University of California Medical School before filing suit.

Requiring these plaintiffs to apply to adopt is not an exercise in futility. Filing an adoption application establishes that a plaintiff not only have a "desire to adopt," but will in fact actually adopt a child.

The need to establish plaintiffs' bona fides is particularly acute where there are indications that they lack a present intention to adopt. For instance, in the case of Skahen and Smith, the only adoption they propose is that of the Bradleys' daughter. As to plaintiff, Gilmore, it would appear that although she alleges a "desire to be considered" as an adoptive parent, this desire means only that she "hopes one day to adopt a child." The analysis could go on with respect to each of the other plaintiffs (again, except Mr. Lofton) but the Court concludes that the question of whether a party has suffered an injury in fact sufficient to confer standing is not an idle exercise of intellectual curiosity. It is part and parcel of the analysis the Court must conduct to determine whether a par-

ty allegedly seeking redress from harm and injury of a state statute has a personal stake in the outcome of the case. Without such participation by a party with an actual stake in the outcome of the case, there is no injury in fact and no case or controversy justiciable under Article III. *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

**Mr. Steven Lofton's claim**

 Mr. Lofton and an eight-year-old plaintiff, John Doe (represented by next friend Timothy Arcaro) have been together since John Doe's infancy. (*Id.* at pp. 3 and 4). Their claims under the Equal Protection and Due Process Clauses of the 14th Amendment and their alleged denial of privacy, intimate association, and family integrity under the First Amendment are identical.

The Complaint alleges that Mr. Lofton has filed formal application for adoption of John Doe and been rejected on the basis of the challenge statute. Having suffered an "injury and fact" he, and plaintiff, John Doe, are in a substantially different posture in this litigation than are the other plaintiffs who have not sought to become adoptive parents.

Defendants, while agreeing with the foregoing statement (see p. 9 Tr. Mo. Dismiss 3–6–2000) nevertheless take the position that these two plaintiffs have failed to assert the requisite elements of deprivation of a constitutional right as mandated by *Cone Corp.* and *Lujan supra.*

The Court concludes however, that this is an issue that will have to await decision until a subsequent point in these proceedings. The motion to dismiss the claims of Plaintiffs, Steven Lofton and John Doe (acting by and through his next friend, Timothy Arcaro) will be denied without prejudice for further consideration at summary judgment or trial.

For the reasons stated herein, it is

ORDERED, ADJUDGED and DECREED that motions to dismiss the complaint respecting the claims of Douglas E. Houghton, Jr., John Roe, a minor child, by and through his next friend, Timothy Arcaro, Angela Gilmore, Wayne Larue Smith, Daniel Skahen, Brenda Lynn Bradley, and Gregory Dale Bradley be, and the same are hereby, GRANTED and the complaint be, and the same is hereby, DISMISSED WITHOUT PREJUDICE to refile within thirty (30) days from the date of this Order, if those plaintiffs should be so advised.

It is further

ORDERED, ADJUDGED and DECREED that the motions to dismiss the complaint of Steven Lofton and John Doe, a minor child, by and through his next friend, Timothy Arcaro be, and the same are hereby, DENIED. The Defendants shall answer the complaint, as it pertains to these two defendants, within thirty (30) days from the date of this Order. Robert A. Butterworth, Jr., Attorney General of the State of Florida is excused from further participation in this case by reason of the agreement of counsel concerning his dismissal, upon agreement that he would abide by all lawful orders of the Court herein.