John CARROLL, Plaintiff,

v.

James NAKATANI, in his capacity as Chairperson/Director of the State of Hawaii Department of Agriculture, et al., Defendants.

Patrick Barrett, Plaintiff,

v.

State of Hawaii, et al., Defendants.

No. 00–CV–641, 00–CV–645.

United States District Court,
D. Hawai'i.

July 12, 2001.

Paul D. Hicks, The Law Office of Richard Lee, Honolulu, HI, for John Carroll in CV No. 00–00641.

Girard D. Lau, Office of the Attorney General–Hawaii, Honolulu, HI, for James J. Nakatani, Paul G. Lamahieu, Timothy E. Johns, Seiji Naya, Kazu Hayashida, Raymond Sato in CV No. 00–00641.

Sherry P. Broder, Honolulu, HI, for Charles Ota, Colette Y. Machado, Nalani Olds, Nani Brandt, Clayton Hee, Gladys Brandt, Dante Carpenter, Beniamina Ilei, Hannah Springer in CV No. 00–00641 and Philip W. Miyoshi, Office of Hawaiian Affairs, Trustees of the Office of Hawaiian Affairs, in CV No. 00-00645.

William S. Helfand, Alan N. Magenheim, Kevin D. Jewell, J. Preston Wrotenbery, Barbara E. Roberts, Magenheim Bateman

& Helfand P L L C, Houston, TX, Patrick W. Hanifin, Im Hannifin Parsons, John W. Goemans, Honolulu, HI, for Patrick Barrett, in CV No. 00–00645.

Girard D. Lau, Office of the Attorney General–Hawaii, Honolulu, HI, for State of Hawaii, Benjamin J. Cayetano, in CV No. 00–00645.

Arnold L. Lum, Native Hawaiian Legal Corp., Honolulu, HI, for 'Ilio'ulakalani Colition, Inc, Victoria Holt–Takamine, Piilani Smith, Wayne Kaho'onei Panoke, Momi Kamahele, in CV No. 00–00645.

*ORDER GRANTING PLAINTIFF BARRETT'S MOTION TO AMEND COMPLAINT; GRANTING DEFENDANT OHA'S MOTION FOR JUDGMENT ON THE PLEADINGS AGAINST PLAINTIFF BARRETT AND GRANTING DEFENDANT SCHHA, ET AL.'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF BARRETT*

DAVID ALAN EZRA, Chief Judge.

The court heard the parties' Motions on July 2, 2001. Sherry Broder, Esq., appeared on behalf of Defendant OHA; Robert Klein, Esq., appeared on behalf of Defendant SCHHA and Anthony Sang, Jr.; Carl Christensen, Esq., appeared on behalf of Defendant 'Ilio'ulaokalani Coalition, et al.; and Deputy Attorney General Girard D. Lau appeared on behalf of the State Defendants. William Helfand, Esq., and Patrick Hanifin, Esq., appeared on behalf of Plaintiff Barrett. After considering the Motions and the supporting and opposing memoranda, the court GRANTS Plaintiffs' Motion for Leave to File First Amended Complaint, but also GRANTS Defendants' Motions for Summary Judgment.

*MOTION TO AMEND COMPLAINT*

As a preliminary matter, the court takes up Plaintiff Barrett's Motion for Leave to File First Amended Complaint. Fed. R.Civ.P. 15(a) states that "leave shall be freely given when justice so requires." In this case, the proposed First Amended Complaint does not add any new parties or claims, but rather seeks to clarify Plaintiff's existing claims. After review, the court concludes that no prejudice will result from the amendment. Indeed, nearly all the Defendants (OHA, the State Defendants, 'Ilio'ulaokalani Coalition, et al., and SCHHA) have filed Statements of No Position. The court therefore GRANTS Plaintiff's Motion.

*DEFENDANTS' MOTIONS*

**I. BACKGROUND**

At the outset, the court notes that the background as set out here relates only to Plaintiff Barrett and not to consolidated Plaintiff Carroll, as the instant motions were brought only in relation to the *Barrett* case.

On October 3, 2000, Plaintiff filed his original complaint in this court. In it (as clarified by his First Amended Complaint, which he has just been granted leave to file), he challenges the constitutionality of Article XII of the Hawaii State Constitution insofar as it creates the Hawaiian Homes Commission ("HHC") and the Office of Hawaiian Affairs ("OHA"), and establishes native Hawaiian gathering rights. *See* First Amended Complaint ("FAC") ¶ 2. Plaintiff challenges the Article on the grounds that it (and statutes implementing it) restricts the provision of benefits to only those classified as "native Hawaiians"[1] or "Hawaiians"[2] in violation of the

---

1. "Native Hawaiians" are those who are descendants of the races inhabiting the Hawaiian Islands previous to 1778 with at least a 50% Hawaiian blood quantum. *See* Haw. Rev.Stat. § 10–2.

2. "Hawaiians" are those who are descendants of the races inhabiting the Hawaiian Islands previous to 1778 without reference to blood quantum. *See* Haw.Rev.Stat. § 10–2.

Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Id.* He seeks a declaration from this court that he and those of all races are entitled to seek the Government rights and benefits created by Article XII.

On March 21, 2001, Defendant OHA filed a Motion for Judgment on the Pleadings, arguing that Plaintiff does not have standing to bring the action and that it is not ripe for adjudication. Generally, OHA argues that Plaintiff never formally applied for any of the benefits conferred by Article XII. He apparently made an initial application for a business-start-up loan from OHA, but OHA returned his application, saying he needed to provide additional information before it could be processed. Plaintiff never responded to this additional request for information. He never prepared a business plan.[3] Defendant OHA therefore argues that because Plaintiff was not actually deprived of any OHA benefit for which he had formally applied, he has not suffered any "injury in fact" and lacks standing. Further, OHA argues that the case is not ripe because OHA should first have the chance to consider Plaintiff Barrett's complete application before a federal court steps in. Once that is done, the issues (if any remain) will be in clearer focus for the court to evaluate.

On March 23, 2001, Defendants 'Ilio'ulaokalani Coalition,[4] et al. joined in OHA's Motion, as did the State Defendants. On June 14, 2001, Plaintiff Barrett filed his Opposition, and on June 21, 2001, OHA filed its Reply, which was joined by the 'Ilio'ulaokalani Coalition, et al. and the State Defendants.

On March 23, 2001, Defendants State Council of Hawaiian Homestead Associations ("SCHHA") and Anthony Sang, Jr. filed a Motion for Summary Judgment, arguing that Plaintiff Barrett lacks standing to bring challenges to the HHC. Essentially, SCHHA argues that Plaintiff Barrett did not seek a Hawaiian homestead lease before filing his Complaint and therefore lacks standing.[5] Further, it argues that Plaintiff's alleged injury is not redressable because the Hawaiian homestead lease program (as implemented by the HHC) is bound up with federal law, which is not being challenged here. On March 28, 2001, Defendants 'Ilio'ulaokalani Coalition, et al. joined in SCHHA's Motion. On June 14, 2001, Plaintiff Barrett filed his Opposition, and on June 21, 2001, SCHHA filed its Reply, which was joined by the 'Ilio'ulaokalani Coalition, et al. and the State Defendants.

## II. STANDARD OF REVIEW

Rule 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Courts must view the evidence and make any inferences in the

---

**3.** In addition, Plaintiff Barrett is disabled and has not worked since 1975. His income consists entirely of Social Security disability benefits payments.

**4.** The 'Ilio'ulaokalani Coalition is a group of native Hawaiian gatherers.

**5.** Specifically, Plaintiff Barrett applied for a Hawaiian homestead lease on October 28, 2000, several weeks after the original Complaint was filed. Subsequently, the Hawaiian Homes Commission returned Plaintiff's application, stating that it would not be processed unless and until Plaintiff could provide proof of at least 50% native Hawaiian ancestry.

light most favorable to the party opposing summary judgment. *See Diaz v. American Telephone & Telegraph,* 752 F.2d 1356, 1362 (9th Cir.1985). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. *See* Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *See Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: the evidence either presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *See id.* (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)).

█ Where the summary judgment motion is based on standing, however, the plaintiff must make "a factual showing of perceptible harm." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 566, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see also Deck v. American Hawaii Cruises, Inc.,* 121 F.Supp.2d 1292, 1299 (D.Haw.2000) (stating that even on summary judgment motion plaintiff bears burden of demonstrating standing "by specific evidentiary facts and not by mere allegations."). In a challenge to standing, the party seeking to invoke federal jurisdiction bears the burden of showing that jurisdiction is proper, even if it is the non-moving party. *See Unigard Ins. Co. v. Dept. of Treasury,* 997 F.Supp. 1339, 1341 (S.D.Cal.1997) (citing *Thornhill Publishing Co. v. Gen. Tel. & Electronics Corp.,* 594 F.2d 730 (9th Cir. 1979)).

Although OHA's Motion is styled as one for "Judgment on the Pleadings," pursuant to Fed.R.Civ.P. 12(c), the court construes it as one for summary judgment because it relies on evidence (depositions, etc.) outside the pleadings. *See* Fed.R.Civ.P. 12(c) (noting that to the extent that "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment"). SCHHA's Motion was originally filed as one for summary judgment.

## III. DISCUSSION

### A. OHA's Motion [6]

Before proceeding on the merits of any case, plaintiffs must establish that they have "standing" to sue, that is, they must show that they present a "case or controversy." U.S. Const. Art. III, § 2. The Supreme Court has articulated three basic standing requirements: (1) the plaintiff must have suffered an "injury-in-fact," which is actual, concrete, and particular-

---

**6.** This section of the Order deals with OHA's arguments as they relate to OHA programs. To the extent that OHA makes arguments on behalf of the Hawaiian Homes Commission or of native Hawaiian customary gathering rights, they are considered in other portions of this Order.

ized, not conjectural or hypothetical; (2) the injury must have been caused by the defendant; and (3) the injury must be one that is redressable by the court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see also Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 474–475, 102 S.Ct. 752, 70 L.Ed.2d 700 (finding that courts should refrain from deciding " 'abstract questions of wide public significance' which amount to 'generalized grievances.' "). The court, therefore, now discusses each of these elements.

### 1. Injury in Fact

In his deposition, Plaintiff Barrett states that he applied for a $10,000 business start-up loan from OHA. *See* Barrett Depo. at 8; *see also* Exhibit D attached to OHA's Motion (Plaintiff's application for Native Hawaiian Revolving Loan Fund ("NHRLF"), which is administered by OHA). In the application, Plaintiff Barrett stated: (1) his name, (2) his address, (3) that he is applying for a $10,000 loan, and (4) that he is 0% Hawaiian. *See* Exhibit D. He left blank those portions of the application asking for his social security number, his phone number, his employer, and information regarding the business he proposed to start up. *See id.* OHA then returned the application to Plaintiff with a note stating: "Please complete the application and return it to [OHA]. Include a phone number. And a copy of your birth certificate." *Id.*

OHA contends that because Plaintiff Barrett never submitted a complete application for a business loan, he has not suf-

fered any "injury-in-fact," i.e., OHA never rejected his application. Moreover, Plaintiff's application is dated October 19, 2000. His complaint was filed October 3, 2000. Therefore, at the time the original Complaint was filed, Plaintiff had not even made an initial perfunctory attempt to apply for the loan.

■ The court finds first that, as a factual matter, the evidence establishes that Plaintiff Barrett did not submit his application in any form to OHA until after he filed his Complaint. *See* NHRLF Application (signed and dated October 19, 2000) (attached as Exhibit D to OHA's Separate and Concise Statement of Facts). Plaintiffs must have standing at the time their Complaint is filed. *See Deck v. American Hawaii Cruises, Inc.*, 121 F.Supp.2d 1292, n. 3 (D.Haw.2000) (collecting cases). Therefore, the appropriate inquiry for this court is not whether Plaintiff has standing based on his incomplete loan application, but whether he has standing despite not having submitted an application, incomplete or otherwise.[7]

■ When a plaintiff brings an equal protection challenge to a race-conscious program and seeks forward-looking relief, the "injury" is the inability to compete on equal footing, not the denial of the benefit. *See Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 666, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993); *accord Texas v. Lesage*, 528 U.S. 18, 21, 120 S.Ct. 467, 145 L.Ed.2d 347 (1999). For example, in *Northeastern Florida*, the plaintiff was an association of contractors challenging the city's program

---

7. However, as discussed *infra*, whether Plaintiff has standing depends not on whether or when he submitted an application but whether he is "ready and able" to compete for the loan sought. The completion of an application might serve as evidence that Plaintiff is

so "ready and able," but alone it is not dispositive. For this reason, then, the court need not decide whether to measure standing from the date of the original Complaint or the First Amended Complaint.

of setting aside 10% of all government contracts for businesses that were at least 51% women- or minority-owned. The Court held that, to establish standing, the plaintiff need only show that it is "able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis." *Northeastern Florida,* 508 U.S. at 666, 113 S.Ct. 2297. In that case, the plaintiffs alleged that its members "regularly bid on contracts in Jacksonville and would bid on those that the city's ordinance makes unavailable to them." *Id.* at 668, 113 S.Ct. 2297. The Court found this sufficient for standing purposes, and allowed the case to go forward on the merits. *See id.*

Applying *Northeastern Florida,* the Ninth Circuit held in *Bras v. California Public Utilities Commission* that an architect (who had previously submitted numerous public contracting bids and had a more than 20–year history working for the public utility company) had standing to challenge a discriminatory contracting policy where he stated in his declaration that: "I earnestly desire to reinstate my long term business relationship with Pacific Bell ... in the future and stand ready, willing and able to provide such services, should I be given an opportunity to do so." 59 F.3d 869, 874 (9th Cir.1995). In addition, he submitted evidence that the defendant had previously been pleased with his work and would reconsider him when it next re-evaluated its needs. *Id.* He also established that he was actually deprived of a contract in the recent past because of the

policy and that he was "eligible to participate" in the bidding process in the future. *Id.* Thus, the court held that the plaintiff had standing, even though at the time of suit, there were no contracts available for immediate bidding.

■ OHA argues that Plaintiff Barrett is not "able and ready" to obtain an OHA loan. He did not submit a loan application before filing the instant suit. He has not worked since 1975 and is considered 100% disabled by the Social Security Administration. He has no business plan and in his deposition could do nothing more than offer vague notions of the business he intended to start up (a copy shop). He has not approached any other sources for a loan, a prerequisite for obtaining a NHRLF loan. *See* NHRLF brochure, attached as Exhibit E to Plaintiff Barrett's Separate and Concise Statement of Facts in Opposition to OHA's Motion (noting the eligibility requirements for obtaining a loan).[8] OHA argues that Plaintiff Barrett has not taken any of the steps necessary to obtaining a business loan, from OHA or any other source. He therefore cannot show that he has suffered "injury" as a result of the race-consciousness of the program.

Plaintiff Barrett, on the other hand, simply argues that none of this is required. The first prerequisite to obtaining an NHRLF loan is that the applicant be "Hawaiian." As Plaintiff can never meet this requirement, his application (and compliance with the other prerequisites) would be futile; it can never be

---

**8.** According to the brochure, the "credit and eligibility requirements" are:
- All business owners or partners must be Hawaiian; there are no blood quantum restrictions.
- Applicant must reside and operate the business in the state of Hawai'i.
- Applicant should have good credit history.
- Applicant must not have an immediate family member employed by OHA.

- Applicant should have thorough knowledge and/or related experience in the proposed business.
- *Applicant must demonstrate they cannot get financing from two commercial banks based on business and personal finances.*
- Business projections must be substantiated and support loan repayment.
- Applicant must be of good character and have a sound management aptitude.

complete. *See* Depo. of Kaulana Park, Loan Fund Manager for NHRLF, at 86–87. In his deposition and in his declaration, Plaintiff Barrett has stated his sincere interest in applying for OHA benefits. Defendants point to no evidence that this is not his true intention (other than what inferences may be drawn from his inaction in making any start-up preparations). Plaintiff Barrett submits that the phrase "able and ready" means "able and ready" to apply for benefits, not ready and able to ultimately obtain them. If the latter were true, he argues, then there would be no substance to the distinction between the ability to compete on equal footing and the ability to achieve the end result.

This court finds that Plaintiff Barrett does not have standing to challenge OHA's NHRLF program. While Plaintiff Barrett is correct that he need not show that he would obtain the loan but for his lack of Hawaiian ancestry, he must be able to demonstrate that he would benefit from a business loan if one were awarded to him, in other words, he must have some real stake in the litigation above and beyond his philosophical position. This determination comports with the contractor set-aside cases cited by all the parties. In *Northeastern Florida*, for example, the Supreme Court based its standing determination on a specific finding that members of the plaintiff's association "regularly bid on contracts in Jacksonville and would bid on those that the city's ordinance makes unavailable to them." 508 U.S. at 668, 113 S.Ct. 2297. It distinguished its earlier case of *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), which

denied standing to an association of construction firms who claimed they were denied business opportunities because of restrictive zoning laws. In *Warth*, the Court held that the association lacked standing because it had not applied for any kind of permit or variance for any specific project. *See Northeastern Florida*, 508 U.S. at 668, 113 S.Ct. 2297 (citing *Warth*, 422 U.S. at 516, 95 S.Ct. 2197). In *Northeastern Florida*, then, it was clear that the member contractors would have been able to perform and would have benefitted from the contracts, had they been awarded to them. Notably, the plaintiff in *Northeastern Florida* was not someone with a mere ideological objection to the minority set-aside program, but was an association that very likely would benefit from its eradication. The plaintiff in *Northeastern Florida* likewise was not someone thinking about becoming a contractor one day and filing suit against the set-aside program on the grounds that if he one day became a contractor he might like to apply for government contracts.

Similarly in *Bras*, the plaintiff was a contractor with a 20–year history of competing for projects. 59 F.3d 869. His background demonstrated that he was "ready and able" to take on a project should one come his way.[9] Indeed, in all the contractor set-aside cases cited by the parties, the plaintiffs awarded standing were contractors. The same principle also applies to the school admissions cases cited by the parties, i.e., cases in which an applicant to a school challenges a race-based admissions process. In all these cases, the plaintiffs were actual applicants to the school who were "ready and able" to at-

---

9. Specifically, as stated earlier, his background established a long history of successfully performing public contracts. *See id.* at 874. Further, the public utility stated that it would consider plaintiff for its future needs. Plaintiff had lost out on a previous contract because of the policy, and was "eligible to participate in the future." *Id.* All this, combined with his declaration that he "earnestly desire[d] to reinstate my business relationship with [the public utility]," confirmed that plaintiff had standing to seek prospective injunctive relief.

tend that school if they were awarded admission. Thus, for example, in *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978), the plaintiff need not have shown that he would be admitted to the medical school but for the race-based criteria, but he must establish that he would be "ready and able" to attend the medical school if he were admitted.

Plaintiff Barrett cannot establish that he is "ready and able" to benefit from an OHA business start-up loan. He has shown no real initiative in starting a new business—he has not sought alternate sources of financing (as is required by OHA, even for Hawaiians), he has not formulated even the most basic of business plans, and could offer no real details about his proposed business, among other things. In short, he has offered no bona fides (other than his cursory statement that he wants to start up a business) that he actually intends to start a copy shop.[10]

The Southern District of Florida considered an analogous situation in *Lofton v. Butterworth*, 93 F.Supp.2d 1343 (S.D.Fla. 2000). There, homosexuals wishing to adopt children sued the state challenging its statute prohibiting homosexuals from adopting. *See id.* The court held that of the several plaintiffs, only the one who had actually submitted an application to be an adoptive parent had standing to sue. *Id.* The rest, those just stating a wish or intention to someday adopt, were denied standing on the grounds that they had not established bona fides, that they had not shown a true intention to be adoptive parents. *Id.* at 1347. The court distinguished *Northeastern Florida*, stating:

> [In *Northeastern Florida* ], the group of white contractors challenging the ordinance were ready, willing, and able to submit bids on city construction contracts. There was no question that they had submitted bids for this type of city construction work in the past and ready to do so in the future. The group had a detailed and documented history of submitting bids for city construction contracts for which they were now to be precluded from so bidding. Here, there is no allegation nor any suggested inference that any of the plaintiffs, except for [the one who submitted a formal application], are presently, ready, willing, and able to adopt.

*Id.; cf. Wooden v. Board of Regents of the Univ. of Georgia*, 247 F.3d 1262, 1284–85 (11th Cir.2001) (finding that student challenging a race-based admissions policy lacked standing to sue for prospective injunctive relief where there was no evidence that he actually intended to reapply for admission);[11] *cf. also Grahek v. City of*

---

**10.** In his deposition, Plaintiff confirmed that he had not done any research on opening a copy shop other than to casually speak to a sales clerk at Office Depot. He had no knowledge about the cost of rent or equipment and only a vague idea about the cost of paper. He had not applied to any other lending institutions, such as a bank or the Small Business Administration, and had not formulated any business plan. *See* Barrett Depo. at 12–14, 37, 42, 44. Further, the court notes that, unlike in the contractor cases, he has no work history that might bolster his bona fides—he has not worked since 1975.

The court stresses that the fact that Plaintiff is disabled does not factor into its standing analysis. Of course disabled persons can, and do, run successful businesses. The holding in this case is based entirely on Plaintiff's inability to establish that he actually intends to start a copy business as evidenced by his failure to take any of the necessary preliminary steps to starting a business by anyone who is generally interested in doing so.

**11.** In discussing whether plaintiffs would be entitled to damages (as opposed to injunctive relief), the *Wooden* court found that plaintiffs lacked standing where their applications had been rejected prior to the stage in the admissions process where race was considered. 247 F.3d 1262.

*St. Paul,* 84 F.3d 296 (8th Cir.1996) (white male police officer candidates did not have standing to challenge race-based hiring scheme where defendants showed that they would not have been hired even absent racial considerations).[12]

As in *Lofton,* Plaintiff Barrett here has not presented anything more than a generalized grievance. His statement in his declaration and deposition that he is "interested" in obtaining a loan to open a copy shop is insufficient to confer standing in light of Defendants' substantial evidence that he is not actually "able and ready" to do so. Plaintiff Barrett simply cannot show that he has a present intention to start a copy shop, rather than a vague idea that one day he might like to do so.

The court stresses that it is not holding that any person seeking to bring a challenge such as Plaintiff Barrett's must always first submit a completed application to OHA when it is clear that such application would be futile. The Supreme Court and the Ninth Circuit have held that, at least in the context of employment discrimination claims, a worker need not actually apply for a promotion or other benefit when it is clear that such promotion or benefit will not actually be conferred. *See Internat'l Bro. of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Gifford v. Atchison, Topeka and Santa Fe Railway Co.,* 685 F.2d 1149 (9th Cir.1982). Thus, the fact that Plaintiff Barrett never submitted an application prior to filing the lawsuit is not fatal to his claim (though it may have served as evidence of his bona fides). What is fatal is the lack of any showing that he is "able and ready" to benefit from an OHA loan.[13] In *Internat'l Bro.* and *Gifford,* the plaintiffs were employees of the defendant companies from whom they sought promotions. Just by virtue of being company employees, those plaintiffs were "able and ready" to compete for promotions, even though they had not submitted formal applications. Plaintiff Barrett, as previously discussed, has not overcome Defendants' showing that he is not "able and ready" to compete for a business loan because he has no real present and imme-

---

12. At the hearing, Plaintiff referred to several cases in support of his position that he had not cited in his briefs. *E.g., Turner v. Fouche,* 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970); *Morrison v. Garraghty,* 239 F.3d 648 (4th Cir.2001); *Boucher v. Syracuse Univ.,* 164 F.3d 113 (2d Cir.1999); *Beasley v. Alabama State Univ.,* 966 F.Supp. 1117 (M.D.Ala. 1997). None of these cases support Plaintiff's position. In *Morrison,* for example (which Plaintiff relied on most heavily), an inmate (who was not Native American) sued the prison warden over a policy restricting consideration of requests to have Native American religious items to those who could show Native American ancestry. In finding that the inmate had standing, the Fourth Circuit did not merely rely on the plaintiff's declaration that he desired such items, but also that he was a member of the group "Heritage Examined Around Redman Traditions," a group that practices "Native American Spirituality." *Morrison,* 239 F.3d at 652. In contrast to the instant case, the court in *Morrison* specifically

noted that there was no doubt as to the plaintiff's sincerity. *Id.* at 353, 90 S.Ct. 532. Likewise, the other cases mentioned at the hearing were cases in which the plaintiffs had standing in contexts which were very dissimilar to the instant case.

13. For this reason, the court rejects Plaintiff Barrett's interpretation of "able and ready" to mean "able and ready to apply" for benefits. One must be "able and ready" to make use of the benefits. Otherwise, under Plaintiff's broad interpretation, there would be no meaning to the standard. It would apply in every case. The constitutional requirement of true standing as articulated by both the Supreme Court and the Ninth Circuit would be subverted to allow anyone who is ideologically inclined to file suit even absent any genuine stake in the case or controversy. While some may find this appropriate or even ideologically compelling, the Supreme Court has consistently rejected this broad approach to standing.

diate intention of opening a business. He has not suffered "injury-in-fact."

### 2. Causation and Redressability/Ripeness

Because the court has found that Plaintiff has not suffered any injury-in-fact under the first prong of the standing analysis, it is unnecessary to address the final two prongs. Similarly, the court need not address Defendant OHA's argument that the case is not ripe for judicial review. Defendant OHA's Motion, therefore, is GRANTED. Plaintiff Barrett lacks standing to challenge OHA's programs.[14]

### B. SCHHA's Motion

In addition to challenging Article XII's implementation of OHA, Plaintiff also challenges it insofar as it implements the Hawaiian Homes Commission Act. Specifically, he argues that he cannot apply for a Hawaiian homestead because he does not qualify as a "native Hawaiian" under the Act. SCHHA seeks a ruling that Plaintiff lacks standing to challenge the Hawaiian Homes Commission Act. First, it argues that Plaintiff lacks standing because he did not submit an application for a Hawaiian homestead lease until after he filed his initial complaint. Second, it argues that in any event, Plaintiff's injury cannot be redressed by this court because the Hawaiian Homes Commission Act and its implementation is inextricably tied up with federal law, which is not before the court

in this case. The court now turns to these arguments.

### 1. Injury–in–Fact

This court has already held, as detailed above, that submission of an application is not a necessary prerequisite for standing where it is clear that the application would be rejected (though submission of an application may go to a plaintiff's bona fides). What is required is that Plaintiff show he is "able and ready" to compete for the benefit sought; he must show that he really wants a lease, or to put it another way, that he has a personal and genuine interest in obtaining a lease.

In this circumstance, unlike the situation with the OHA business loan, Plaintiff likely has suffered the requisite injury by not being able to compete on equal footing for a Hawaiian homestead lease. There is nothing to be done to obtain a Hawaiian homestead lease other than to apply by stating a desire to obtain a lease and providing certain personal information (such as ancestry verification).[15] This is in contrast to obtaining an OHA business loan where Plaintiff must show a genuine business purpose or obtaining a government contract where a plaintiff must show (for example) that he is, in fact, a contractor. Thus, Plaintiff's late application for a lease does not, by itself, defeat his claim in this case.

SCHHA's argument that Plaintiff does not have the requisite history of applying

---

**14.** In his June 14, 2001, declaration (made significantly after the instant motions were filed and shortly before they were scheduled for hearing), Plaintiff asserts for the first time an "interest" in participating in OHA's Individual Development Saving Account program. As explained earlier, Plaintiff bears the burden of establishing standing, and this eleventh hour bare assertion is not sufficient to confer it.

**15.** If there are other requirements to obtaining a Hawaiian homestead lease, they are not part of the record in this case. The only documentation submitted to this court on this issue is the initial application for the lease, which requires only basic personal information (name, social security number, etc.), a statement of Hawaiian ancestry, and an indication of the type of homestead lease for which the applicant is applying (residential, agricultural, or pastoral).

for HHC benefits necessary to confer standing is unavailing. One does not "regularly" apply for homestead leases the way a contractor regularly applies for contracts. Moreover, it would have been futile for him to have made prior applications given the racial criteria, even if he indeed had a genuine and sincere desire for a homestead lease. It would be ludicrous to hold that because Plaintiff had not in the past applied for benefits to which he was clearly not entitled, he cannot now bring a challenge. Plaintiff, then, has made the necessary showing of injury in this instance.[16] However, the court need not definitively decide this question because, as discussed below, even if Plaintiff has the requisite injury for standing, he fails the redressability prong of the analysis.

### 2. Redressability [17]

■ The final prong of the standing analysis is redressability. Plaintiff Barrett must be able to show that a ruling in his favor would very likely redress his grievances. *See Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130. His alleged injury here is the inability to compete for a Hawaiian homestead lease on equal footing with native Hawaiians. Therefore, a ruling from this court must make it likely that Plaintiff

would be able to compete on equal footing in the future.

The Hawaiian Homes Commission Act of 1920 ("HHCA") was adopted by the United States Congress on July 9, 1921. It set aside, in trust, about 200,000 acres of land for homesteading by native Hawaiians. *See Rice v. Cayetano*, 528 U.S. 495, 506, 120 S.Ct. 1044, 145 L.Ed.2d 1007 (citing the HHCA). To that end, Section 208 of the HHCA provides the following conditions on Hawaiian homestead leases:

> Each lease made under the authority granted the department by the provision of section 207 of this title, and the tract in respect to which the lease is made, shall be deemed subject to the following conditions, whether or not stipulated in the lease: (1) The original lessee shall be a native Hawaiian,[18] not less than twenty-one years of age....

HHCA, *reprinted in* Haw.Rev.Stat. T. 1, § 1 (1997) (adopted in the Haw. Const. art. XII § 1).

When the State of Hawaii was subsequently admitted to the United States, Congress adopted the Hawaiian Admissions Act on March 18, 1959. Section 4 of the Admissions Act states:

---

16. SCHHA also notes in its Motion that it is highly unlikely that Plaintiff Barrett would qualify for a Hawaiian homestead lease in any event as he has never applied for a mortgage and does not have sufficient assets to do so. *See* Barrett Depo. at 68, 78–79. As discussed earlier, however, a plaintiff need not show that he would ultimately obtain the benefit sought, only that he is unable to compete for it on equal footing. Since the record in this case does not establish what one must do with a Hawaiian homestead lease, Defendant SCHHA has not made a sufficient showing (for purposes of a summary judgment motion) that Plaintiff is not "able and ready" to make use of such a lease.

17. The court notes that the issue of redressability was not mentioned in SCHHA's initial

motion, but only in its Reply. While arguments made for the first time on Reply should ordinarily not be considered, *see* Local Rule 7.4, the court will consider it because standing is a question of constitutional magnitude which goes to the jurisdiction of this court. In addition, the redressability issue was raised by the 'Ilio'ulaokalani Coalition, et al.'s joinder to SCHHA's Motion (filed March 28, 2001), and so Plaintiff was on notice that redressability was at issue.

18. A "native Hawaiian" is defined under the Act as any "descendant of not less than one-half part of the blood of the races inhabiting the Hawaiian Islands prior to 1778." HHCA, § 201.

As a compact with the United States relating to the management and disposition of the Hawaiian home lands, the Hawaiian Homes Commission Act of 1920, as amended, shall be adopted as a provision of the Constitution of the said State, as provided in section 7, subsection (b) of this Act, *subject to amendment or repeal only with the consent of the United States,* and in no other manner ... that any amendment to increase the benefits to lessees of Hawaiian home lands may be made in the constitution, or in the manner required for State legislation, but *the qualifications of lessees shall not be changed except with the consent of the United States.*

Hawaiian Admissions Act, Pub.L. No. 86–3, 73 Stat. 4 (1959) (emphasis added); *see also Naliielua v. Hawaii,* 795 F.Supp. 1009, 1011 (D.Haw.1990) (explaining history of the HHCA and Admissions Act). Accordingly, the plain language of both the HHCA and Admission Act confirms that the United States has reserved to itself a right of consent before any alteration of the system of Hawaiian homestead leases can be made. In the absence of the United States as a party to this action, this court is unable to redress Plaintiff's injury in any meaningful way. In other words, this court could not give redress to Plaintiff because declaring the Hawaiian homestead leasing program unconstitutional under state law would not enable Plaintiff to compete on equal footing for a Hawaiian homestead lease. No such leases would be available to anyone as the native Hawaiian

ancestry requirement is a *federal* requirement (in addition to being a state requirement), one that the court cannot strike down absent the United States as a party in this case. *Cf. id.* at 1013, n. 4 ("the court notes that the state, in administering the [HHCA], is implementing an obligation which 'is rooted in federal law, and the power to enforce that obligation is contained in federal law.'") (citing *Keaukaha–Panaewa Community Ass'n v. HHC,* 739 F.2d 1467 (9th Cir.1984)). The United States is an indispensable party to any successful challenge to the lease provisions of the HHCA, and Plaintiff has chosen not to join the United States as a party therefore depriving it of an opportunity to defend its interest. Thus, SCHHA has made an adequate showing that this court could not redress Plaintiff's injury as alleged. Defendant SCHHA's Motion is GRANTED.

## C. Native Hawaiian Gathering Rights [19]

■ The final portion of Article XII that Plaintiff challenges, in addition to the HHC and OHA, is that portion which establishes native Hawaiian gathering rights. Specifically, Art. XII, § 7 states:

The State reaffirms and shall protect all rights, customarily and traditionally exercised for subsistence, cultural and religious purposes and possessed by ahupua'a [20] tenants who are descendants of native Hawaiians who inhabited the Hawaiian Islands prior to 1778, subject to

---

**19.** The argument that Plaintiff lacks standing to challenge Art. XII, § 7 ("traditional and customary rights") is primarily advanced in the briefs filed by the 'Ilio'ulaokalani Coalition, Inc., et al., though OHA's briefs also address the subject.

**20.** "An ahupua'a is a land division usually extending from the mountains to the sea

along rational lines, such as ridges or other natural characteristics." *Public Access Shoreline Hawaii v. Hawaii County Planning Commission,* 79 Hawai'i 425, 903 P.2d 1246, 1250 n. 1 (1995). For further discussion on the history of the ahupua'a, *see Kalipi v. Hawaiian Trust Co.,* 66 Haw. 1, 656 P.2d 745, 748–49 (1982).

the right of the State to regulate such rights.

Defendants assert that Plaintiff Barrett does not have standing to challenge this provision as he admits that he has never attempted to exercise gathering rights and has no current plans to do so. *See* Depo. of Plaintiff Barrett at 60–62, 88–89, 92. Further, Plaintiff has not established that any non-Hawaiians have ever been precluded from practicing traditional and customary rights, and thus there is no injury to them. Plaintiff Barrett, on the other hand, argues that he has standing based on his status as a beneficiary of the Ceded Lands Trust "to challenge this illegal mismanagement of the federally created trust." *See* Memo in Opp. to OHA's Motion at 12.

The court notes at the outset that the challenge to § 7 is not an "equal footing" challenge. Plaintiff's injury here is not an inability to compete on equal footing for the right to practice traditional and customary rights. The practice of traditional and customary rights is not a scarce resource to be doled out by the state; there is nothing to compete for. Therefore, the court applies the basis standing analysis under *Lujan*, wherein Plaintiff must show an actual injury resulting from § 7. 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351.

In *Lujan*, the plaintiffs were wildlife conservation and other environmental organizations. *See id.* at 559, 112 S.Ct. 2130. They challenged § 7 of the Endangered Species Act insofar as it applied only to actions taken in the United States or on the high seas; they believed it should also apply to actions taken in foreign nations. *See id.* To establish standing, two of the plaintiffs' members submitted affidavits stating that they had in the past observed endangered species in foreign countries and intended to do so again at some unspecified time in the future. *See id.* at 563, 112 S.Ct. 2130.

The Court held that plaintiffs lacked standing. It found that the affidavits submitted failed to show "how damage to the species will produce 'imminent' injury to [the affiants]." *Id.* at 564, 112 S.Ct. 2130. The fact that they had visited the foreign locations in the past and intended to do so in the future was "simply not enough." *Id.* Specifically, the Court stated that "[s]uch 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support of the 'actual or imminent' injury that our cases require." *Id.*

Similarly, in *Deck*, a cruise ship passenger sued the cruise company for prospective injunctive relief, alleging violations of the Americans with Disabilities Act. 121 F.Supp.2d 1292 (Kay, J.). The court found that the plaintiff's declarations that she intended to take a cruise on the defendant's ship sometime in the future were insufficient to confer standing. *See id.* at 1299. She could not show that any injury from the defendant's allegedly illegal practices was "imminent."

The court finds that the instant case is analogous to *Lujan* and *Deck*. Plaintiff Barrett admits that he does not have any present intention to exercise the rights guaranteed by § 7. As such, this case is even stronger than *Lujan* or *Deck*, as the plaintiffs in those cases indicated a present intent to view endangered species and take a cruise, respectively. Their present intent was bolstered by the fact that they had engaged in those activities in the past. Plaintiff Barrett has never practiced traditional and customary rights and has no present intentions of doing so. He clearly has not suffered any "injury" as a result of

§ 7 and therefore lacks standing to challenge it.

Further, contrary to Plaintiff's argument, Plaintiff does not acquire standing in this matter simply because he may be a beneficiary of the Ceded Lands Trust, codified in the Admission Act, § 5(f).[21] Beneficiaries of the Ceded Lands Trust have the right to challenge the mismanagement of the trust, as pointed out in the cases cited by Plaintiff. *See, e.g., Price v. Akaka,* 3 F.3d 1220, 1225 (9th Cir.1993) (finding that beneficiaries of the trust may maintain federal action for breach of trust; in this case, beneficiaries brought claim based on the allegedly improper expenditure of trust funds); *Napeahi v. Paty,* 921 F.2d 897, 901 n. 2 (9th Cir.1990) (beneficiary had standing to bring breach of trust claims based on determination that certain lands were not included within the trust); *see also Keaukaha–Panaewa,* 739 F.2d 1467 (holding that 42 U.S.C. § 1983 provides a private cause of action to enforce trust obligations under the Admission Act; in this case, plaintiffs were challenging the county's use of Hawaiian homelands for a flood control project). However, Plaintiff here is not bringing a claim based on a breach of the trust terms, and is not claiming "mismanagement" of the trust in any normal sense of the word. Indeed his Complaint does not even discuss the trust, but rather only the practice of customary rights guaranteed under § 7. Thus, Plaintiff's backdoor attempt at creating standing fails; Plaintiff cannot maintain his action with respect to § 7 rights.[22]

---

**21.** For further discussion on the history of the Admission Act and the Ceded Lands Trust, *see Rice v. Cayetano,* 963 F.Supp. 1547, 1551–51 (D.Hawai'i 1997); *Naliielua v. Hawaii,* 795 F.Supp. 1009, 1011 (D.Hawai'i 1990).

**22.** Of course, this is not meant to say that there can never be any challenge to § 7, only that any challenge must come from someone

## CONCLUSION

For the reasons stated above, the court GRANTS Defendants' Motions for Summary Judgment.[23]

IT IS SO ORDERED.

with, at least, present intentions of exercising § 7 rights. Standing to bring this particular claim cannot be obtained through trust beneficiary status.

**23.** The court also granted Plaintiff Barrett's Motion to Amend Complaint, but that is now moot as the case has been dismissed on standing grounds.