645 So.2d 487 (1994)
Bonnie Lynn MATTHEWS and Elaine Kohler, Appellants,
v.
Tom WEINBERG, in his official capacity as Director, District VI of the Florida Department of Health & Rehabilitative Services, and Bob Williams, in his official capacity as Secretary of the Florida Department of Health & Rehabilitative Services, Appellees.
No. 93-02352.
District Court of Appeal of Florida, Second District.
September 30, 1994.
Lora J. Smeltzly and Leslie A. Shanklin of Holland & Knight, Tampa, for appellants.
Linda K. Harris, Tallahassee, and Jack Emory Farley, Tampa, for appellees.
PER CURIAM.
The sole issue in this case is whether the Department of Health and Rehabilitative Services (HRS) failed to comply with statutory *488 rulemaking requirements prior to adopting policies governing the licensing of foster parents. Bonnie Lynn Matthews and Elaine Kohler challenge the trial court's determination that HRS's policy prohibiting "unmarried couples" from becoming foster parents is valid. The trial court also held that HRS District VI had a policy against licensing homosexuals and that the policy violated the right to privacy under the Florida Constitution. Without reaching the constitutional question passed upon by the trial court, we reverse the final judgment; HRS cannot properly implement policies otherwise calling for adoption and promulgation as agency rules.
Ms. Matthews is a therapist for emotionally disturbed children, and she counsels children in HRS foster care. In the fall of 1991, she began counseling M.C., a six-year-old boy with behavioral and emotional problems, who was in his fourth foster care placement. M.C.'s caseworker, Zoe Terry, informed Matthews in January 1992 that M.C.'s foster mother wanted M.C. removed from her home, and that due to his special needs, it was difficult for HRS to find a new foster home for him. Matthews then inquired about becoming licensed as a foster parent to care for M.C.
When Matthews spoke to Ms. Terry about the foster parent application procedures, she informed Terry that she had a roommate, appellant Elaine Kohler, and asked how that would affect the application process. Ms. Kohler is also employed by a mental health care agency, and she counsels foster children through an HRS in-home therapy program. Terry explained that both Matthews and Kohler would have to undergo preliminary background checks and complete a training course, and then HRS would issue Matthews a permanent foster care license. Terry approved of the placement and considered Matthews and Kohler to be ideal caretakers for M.C.
After Matthews and Kohler submitted to the preliminary background checks, M.C. moved into their home on January 31, 1992. HRS employee Arlene Rumac conducted a home study on March 25, 1992, as part of the final requirements for permanent foster care licensing. For the first time, Ms. Rumac asked Matthews and Kohler if they slept in the same bedroom. When they replied that they did, Rumac asked them if they were homosexuals. Matthews and Kohler truthfully responded that they were. Rumac told them, "This could be a problem," and added, "I don't know of any supervisor who would be willing to sign off on you as a gay couple." On April 15, 1992, HRS removed M.C. from Matthews' and Kohler's home and placed him in another foster home.
In August 1992, Matthews and Kohler filed a complaint for injunctive relief and declaratory judgment which alleged that HRS's policies had denied them their rights of privacy, equal protection under the law, and due process guaranteed by the Florida Constitution. Art. I, §§ 23, 2, 9, Fla. Const. As we have noted above, we do not reach the constitutional claims because a court is to decide the case before it, if possible, without determining constitutional issues. See McKibben v. Mallory, 293 So.2d 48 (Fla. 1974); Dennis v. Department of Health & Rehab. Servs., 566 So.2d 1374 (Fla. 5th DCA 1990), review denied, 577 So.2d 1326 (Fla. 1991).
Throughout the proceedings, HRS claimed it had no policy against licensing homosexuals and contended that it removed M.C. from Matthews' and Kohler's home based on its unmarried couple policy. The trial court found that HRS District VI had an unwritten policy against licensing homosexuals as foster parents and that this policy had been applied to Matthews. The trial court also determined, "The Department's so called unmarried couple policy is set forth in part [in] Florida Administrative Code Rule 10M-6005(3)(a), and the unwritten policies used by the Department to supplement the written policy." HRS presented the "unmarried couple rule" as arising from the HRS foster parent guidelines governing family composition. Those guidelines, which were repealed as of May 27, 1992, provided:
(3) Foster Parent Standards. Any exceptions to the following standards shall be for good cause and subject to the written approval of the district program office.

*489 (a) Foster parent applicants shall have had a stabilized, legal marriage of at least one year duration, prior to being licensed.
... .
(c) Two parent families shall be selected in most cases; however, single parent families shall be selected when they can effectively fulfill the needs of a particular child.
Fla. Admin. Code R. 10M-6.005 (repealed May 27, 1992). Prior to initiation of this action, the rules were modified to provide:
(1) Family Composition.
(a) It is most desirable for the substitute care family to include two parents in order to maximize opportunities for the care and nurturing of children....
... .
(4) Length of Marriage. If married, substitute care parents should have a stabilized, legal marriage of at least one year prior to being licensed.
Fla. Admin. Code R. 10M-6.025(1), (4) (effective May 27, 1992).
HRS is entrusted with giving foster children the "custody, care, and discipline as nearly as possible equivalent to that which should have been given by [their] parents." § 39.001(2)(e), Fla. Stat. (1991). The Florida Legislature has mandated that people who have been found guilty of certain crimes are prohibited from becoming foster parents. § 39.001(3)(b), Fla. Stat. (1991). The statutory disabilities include murder, aggravated battery, robbery, child abuse, and felony drug offenses. § 39.001(3)(b), Fla. Stat. (1991). The legislature, however, has not disabled homosexuals or unmarried couples from consideration as foster parents. The legislature has the exclusive power to define and limit the standards pursuant to which foster parents are licensed. In spite of the fact that the legislature has delegated to HRS a degree of discretion empowering it to "establish minimum standards for good moral character, based on screening, for personnel in programs for children or youths," § 39.001(3)(b), Fla. Stat. (1991), the delegated power does not include the denial of a foster parent application based on unwritten rules.
The legislature has made it plain that "[r]ulemaking is not a matter of agency discretion. Each agency statement defined as a rule under s. 120.52(16) shall be adopted by the rulemaking procedure provided by s. 120.54 as soon as feasible and practicable." § 120.535(1), Fla. Stat. (1991). See McDonald v. Department of Banking & Fin., 346 So.2d 569, 580-81 (Fla. 1st DCA 1977) (policy statements of general applicability require rulemaking). Section 120.52(16), Florida Statutes (1991), provides in pertinent part:
(16) "Rule" means each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the organization, procedure, or practice requirements of an agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule.
The homosexual and unmarried couple policies are of general applicability. By applying those policies and not following the rulemaking procedures prescribed in section 120.54, Florida Statutes (1991), HRS exceeded its delegated authority. See § 120.52(8)(a), Fla. Stat. (1991).
HRS contends that the unmarried couple rule is contained in former rule 10M-6.005(3) and current rule 10M-6.025, governing family composition. Former rule 10M-6.005(3)(a) stated, "Foster parent applicants shall have had a stabilized, legal marriage of at least one year duration prior to being licensed." (Emphasis added.) Here, Matthews alone applied to be a foster parent. Kohler was not an applicant, but Matthews informed HRS that she had a roommate. Former rule 10M-6.005(3)(c) stated, "Two parent families shall be selected in most cases; however, single parent families shall be selected when they can effectively fulfill the needs of a particular child." HRS has referred us to no other written rule to support or define its unmarried couple policy. Indeed, HRS's current provision dealing with family composition does not state an unmarried couple policy either. Rule 10M-6.025 states that "[i]t is most desirable for the substitute care family to include two parents," but the rule is barren of any notion that the parents must be married. Fla. Admin. Code R. 10M-6.025(1)(a). *490 It is noteworthy that the current rule does not appear to depend upon a married status. The current rule provides, "If married, substitute care parents should have a stabilized, legal marriage of at least one year prior to being licensed." Fla. Admin. Code R. 10M-6.025(4) (emphasis added). The construction we place upon the family composition rules finds support in the testimony of John Perry, Chief of the Dependency Division of HRS's Department of Children, Youths and Families. He testified that HRS has no written rule or regulation expressly stating that unmarried couples cannot be foster parents. Mary Carol Hill, a licensing specialist for HRS, also stated that she had never heard of the unmarried couple rule being applied prior to this case. We hold that HRS cannot simply apply unwritten rules to deny foster parent applications.
Because HRS has not followed the rulemaking procedure prescribed in section 120.54 in fashioning homosexual and unmarried couple policies, we reverse and vacate the trial court's final judgment. The trial court is instructed to determine an appropriate remedy consistent with this opinion.
Reversed and remanded.
FRANK, C.J., and PATTERSON and ALTENBERND, JJ., concur.