656 So.2d 902 (1995)
James W. COX, Petitioner,
v.
FLORIDA DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Respondent.
No. 82967.
Supreme Court of Florida.
April 27, 1995.
Rehearing Denied July 5, 1995.
Nina E. Vinik, American Civil Liberties Union Foundation of Florida, Miami, Doris A. Bunnell of Doris A. Bunnell, P.A., Bradenton, and Marc E. Elovitz and William B. Rubenstein of American Civil Liberties Union Foundation, New York City, for petitioner.
Anthony N. DeLuccia, Jr., Dist. Legal Counsel, Fort Myers, and Linda K. Harris, Deputy Gen. Counsel, Tallahassee, State of Florida, Dept. of Health and Rehabilitative Services, for respondent.
Ira J. Kurzban of Kurzban, Kurzban & Weinger, P.A., Miami, amici curiae for Florida Psychological Ass'n, Nat. Ass'n of Social Workers, Inc., and Fourteen Concerned Academics.
William E. Adams, Jr. and Rosemary Wilder, Fort Lauderdale, Beatrice Dohrn, Lambda Legal Defense and Education Fund, Inc., New York City, and Paula Brantner and Elizabeth A. Hendrickson, National Center for Lesbian Rights, San Francisco, CA, amici curiae for Gay and Lesbian Lawyers Ass'n, Florida Academy of Public Interest Lawyers, Inc., Lambda Legal Defense and Education Fund, Inc., Nat. Organization for Women (Florida Chapter), and Nat. Center for Lesbian Rights.
John M. Ratliff and Christina A. Zawisza, Children First Project, Legal Services of Greater Miami, Inc., Miami, and Lawrence W. Gordon of Caruana, Gordon, Langan and Eisenberg, P.A., Miami, amicus curiae for Children First: a Joint Project in Law, Medicine and Educ.; and The Youth Law Center.
Kenneth L. Connor, Tallahassee, amicus curiae for The Rutherford Institute.
Robert M. Brake, Eileen M. Brake and William Sanchez, Coral Gables, and Thomas Horkan, Tallahassee, amicus curiae for Florida Catholic Conference.
PER CURIAM.
We have for review State v. Cox, 627 So.2d 1210 (Fla. 2d DCA 1993), which expressly declared valid section 63.042(3), Florida Statutes (1991), and expressly construed several provisions of the Florida Declaration of Rights. Art. I, Fla. Const. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Petitioner James W. Cox is a gay male who, along with a partner, sought to adopt a special needs child. A special needs child is one considered difficult to place for adoption because of factors that may include racial background, physical or mental disability, or *903 the fact that the child is older. At the time Cox and his partner applied for pre-adoption parenting classes, they informed the Florida Department of Health and Rehabilitative Services (HRS) that they were gay. HRS then denied them the opportunity to attend based on the homosexual exclusion contained in section 63.042(3) and informed them that any application could not be considered due to their sexuality.
Cox filed suit for declaratory and injunctive relief, arguing that the statute violated equal protection, due process, and the right to privacy as guaranteed by the Florida Constitution. Cox argued that the statute was unconstitutional both facially and as applied. Later, the parties to the suit entered into a stipulation waiving an evidentiary hearing and allowing the case to proceed to resolution with the parties simply submitting briefs and their own packets of research materials to the trial court.
On March 13, 1993, the trial court entered its summary judgment striking section 63.042(3) on its face and enjoining HRS from enforcing the statute. The trial court concluded that the statute violated the Florida Constitution. HRS appealed to the Second District Court of Appeal on March 31, 1993.
The district court reversed, holding that the trial court did not have a sufficient record to support a summary judgment in favor of the plaintiffs on any issue. Further, the district court determined that HRS was entitled to a summary judgment on the issue of right to privacy, and that section 63.042(3), Florida Statutes (1991), was not unconstitutionally vague. The court also held that section 63.042(3) was not violative of due process protections afforded under the United States Constitution, amendment XIV, and article I, section 9 of the Florida Constitution. Finally, the court held that section 63.042(3) did not violate the equal protection guarantees provided in the United States Constitution, amendment XIV, and article I, section 2 of the Florida Constitution. We approve the decision of the district court except that portion which does not remand the equal protection issue to the trial court for further proceedings.
The record is insufficient to determine that this statute can be sustained against an attack as to its constitutional validity on the rational-basis standard for equal protection under article I, section 2 of the Florida Constitution. A more complete record is necessary in order to determine this issue. See Vildibill v. Johnson, 492 So.2d 1047 (Fla. 1986). Upon remand, the proceeding is limited to a factual completion of the record as to this single constitutional issue and a decision as to this issue based upon the completed record.
The decision of the district court is thus approved in part and quashed in part, and this cause is remanded for further proceedings in accord with this decision.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, HARDING and WELLS, JJ., concur.
KOGAN, J., concurs in part and dissents in part with an opinion, in which ANSTEAD, J., concurs.
KOGAN, Justice, concurring in part, dissenting in part.
I concur with the majority to the extent it finds a valid equal protection issue requiring a remand. I dissent, however, because I also would remand as to the due process issues raised by petitioners. Without analysis, the majority essentially is affirming the district court's determination that no valid due process issue exists. Yet the majority simultaneously holds that a question remains as to the rationality of the statute. As a general rule, a statute irrational under an equal protection analysis necessarily violates due process, too. This is because a statute irrational under equal protection has no lawful purpose; and we elsewhere have noted that an improper purpose means the statute violates substantive due process. Department of Law Enforcement v. Real Property, 588 So.2d 957, 960 (Fla. 1991).
I find reason to question this statute under due process. Today, HRS essentially makes a single contention supporting its case: that homosexual acts violate section 800.02, Florida *904 Statutes (1991),[1] and that this fact is sufficient in itself to justify the gay exclusion statute. Yet, in oral argument November 4, 1994, HRS conceded that it does not question heterosexuals about sexual conduct unless something during the background investigation raises a question about improprieties.
I find this a puzzling concession because section 800.02 by its own terms is not limited to homosexuals, nor does it exclude heterosexuals. Yet HRS's application forms only include questions asking whether an applicant is homosexual or bisexual. There is no similar question asking applicants if they are engaging in unnatural and lascivious acts. That being the case, doubt exists as to whether HRS actually is applying the definition it says it has developed in a way that comports with due process. Again, this raises a valid issue that should be explored on remand.
Yet another due process issue exists. I find that HRS's construction of section 800.02 is not supported by the case law.[2] All the relevant precedent from the Florida Supreme Court and Florida District Courts of Appeal apply the statute only to acts involving public indecency, public sexual acts, or nonconsensual sexual assaults, including assaults on persons legally incapable of consenting. There is no Florida case holding that private, nonharmful consensual acts violate section 800.02.
In Franklin v. State, 257 So.2d 21 (Fla. 1971), this Court overturned the statute outlawing "the abominable and detestable crime against nature," but we expressly allowed the defendant to be separately convicted under section 800.02. However, Franklin dealt with two persons having sexual relations in a public place described as a "fill area." Id. at 24. In addressing the applicability of section 800.02, Franklin was quite modest: It stated only that section 800.02 would apply "[u]nder the evidence in this case." Id. Thus, the Court expressly confined its holding to the facts at hand.[3]
Likewise, in Alfaro v. State, 383 So.2d 930 (Fla. 3d DCA 1980), the Third District denied certiorari to review a conviction arising from two persons having sex in the men's restroom of a bus terminal. It is clear that a public restroom does not exist to facilitate sexual acts by anyone, and that any such use intrudes upon the rights of others who may wish to use the restroom for a lawful purpose. See Schmitt v. State, 590 So.2d 404 (Fla. 1991), cert. denied, 503 U.S. 964, 112 S.Ct. 1572, 118 L.Ed.2d 216 (1992). There may be a limited form of privacy in a public restroom, but it does not extend to sexual behavior. Thus, Alfaro also is distinguishable.[4]
The definitional problem here is underscored by more recent cases in Florida. In Schmitt v. State, 590 So.2d 404 (Fla. 1991), cert. denied, 503 U.S. 964, 112 S.Ct. 1572, 118 L.Ed.2d 216 (1992), this Court held that harmless and discreet acts are never "lascivious" merely because they are unorthodox. Rather, acts are lascivious only if they substantially intrude upon the rights of third parties. Id. at 410. Because section 800.02 includes a mandatory "lasciviousness" element, *905 serious doubt remains as to whether any private and nonharmful conduct between two consenting adults can ever fall within the statute's scope. Schmitt, in other words, undermines HRS's definition of "homosexuality" by indicating that section 800.02 was not intended to apply to purely private consensual acts, and has never been so applied.
Judge Zehmer's cogent analysis in Mohammed v. State, 561 So.2d 384 (Fla. 1st DCA 1990), reaches the same conclusion. The problem in that case involved the use of a prior Georgia sodomy conviction to enhance the penalty for a later Florida conviction being imposed under the Sentencing Guidelines. The earlier sodomy conviction apparently had involved private oral sex between a man and a woman.
In Mohammed, Judge Zehmer examined both legal and sociological principles relevant to the statute's interpretation. His discussion was the first to note that section 800.02 most probably was limited solely to nonprivate or nonconsensual acts. Id. at 387. More importantly, the Mohammed court concluded that section 800.02 does not apply to "the consensual acts between a man and a woman in the privacy of their bedroom." Id.; accord Schmitt. Thus, the Georgia sodomy conviction had no Florida equivalent and could not be used to enhance the penalty for the Florida conviction.
Because the language of section 800.02 neither exempts heterosexuals nor applies exclusively to homosexuals, the Mohammed opinion necessarily implies that private consensual acts by homosexuals also would not fall within section 800.02. Any other reading would fly in the face of the statute's plain language, which makes no exception for any particular sexual orientation. Thus, a valid issue exists in this case as to whether HRS's construction of section 800.02 is contrary to law and thus a violation of due process.
Yet another issue exists that raises a valid due process issue. Florida forbids homosexuals even to apply as adoptive parents but imposes no similar absolute restriction on convicted felons or persons listed on the Child Abuse Registry. Indeed, HRS's own administrative regulations expressly establish procedures by which felons and registered child abusers can be screened for adoption, though more intensively than other applicants. Fla. Admin. Code R. 10M-8.00513.
The differential treatment of felons and child abusers on one hand and homosexuals on the other raises a serious substantive due process question. It suggests that the state is completely denying gays access to any meaningful legal process, even the intensive scrutiny reserved for felons and child abusers. Before the State can deny due process in this manner, it must at least advance a legitimate reason for doing so based in fact and empirical study. Here, HRS has advanced no such reason, merely a questionable assertion that section 800.02 justifies the exclusion. Nor did the district court below cite to any material to justify its unsupported conclusion to the contrary.
One final due process issue exists, though it appears the parties may not have raised it until the appeal to this Court: the lack of proper policy-making procedures in creating the HRS definition of "homosexuality." Florida cases indicate that, at a minimum, an incipient rule can be created only in a proper administrative proceeding and its adversarial processes. Florida Cities Water Co. v. Florida Public Serv. Commission, 384 So.2d 1280 (Fla. 1980). HRS did not follow any such procedure here, but merely invented its "definition" after being sued by Mr. Cox. Likewise, the same district Court that upheld the gay exclusion statute has overturned an unwritten HRS incipient rule that was used to deny two lesbians' applications to become foster parents. Matthews v. Weinberg, 645 So.2d 487 (Fla. 2d DCA 1994). I frankly have some difficulty squaring the district court's opinion below with its subsequent opinion in Matthews. Because the Court is remanding for a new proceeding, the district court at least should reconcile this case with Matthews.
For these reasons, I would remand for reconsideration of the various due process issues that exist.
ANSTEAD, J., concurs.
NOTES
[1] Section 800.02, Florida Statutes (1991), states:

Whoever commits any unnatural and lascivious act with another person shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
This statute was adopted by the Legislature in 1917 near the end of the First World War.
[2] HRS cited to no authority on this question.
[3] Some cases on the statute provide no facts, so it is impossible to tell what the exact precedent is. E.g., State v. Fasano, 284 So.2d 683 (Fla. 1973); Witherspoon v. State, 278 So.2d 611 (Fla. 1973). At least one dissenting Justice of the Florida Supreme Court has espoused HRS's view of section 800.02, Florida Board of Bar Examiners Re N.R.S., 403 So.2d 1315, 1317 (Fla. 1981) (Boyd, J., dissenting), but even this argument lacked citation to any authority other than the statute itself. Moreover, the Florida Supreme Court's majority has never adopted the same interpretation.
[4] One very early case suggests  though it is not clear  that acts which would constitute sodomy at common law were not encompassed within the 1917-vintage unnatural and lascivious acts statute. Ephraim v. State, 82 Fla. 93, 89 So. 344 (1921). However, Ephraim is of doubtful validity today, because the Florida courts seem to have accepted the concept that nonprivate or nonconsensual "unnatural acts" fall within the scope of section 800.02. Franklin v. State, 257 So.2d 21 (Fla. 1971) (section 800.02 reaches certain sexual acts in public place).