Steven **LOFTON; Douglas E. Hougton, Jr.; John Doe and John Roe, minor children, by and through their next friend, Timothy Arcaro; Wayne Larue Smith and Daniel Skahen, Plaintiffs,**

v.

Kathleen A. **KEARNEY, Secretary of Florida's Department of Children and Families; and Charles Auslander, District Administrator of District XI of Florida's Department of Children and Families, Defendants.**

No. 99–0058–CIV.

United States District Court,
S.D. Florida,
Key West Division.

Aug. 30, 2001.

---

Leslie Cooper, American Civil Liberties Union Foundation, New York City, Elizabeth Schwartz, Miami Beach, FL, Steven Robert Kozlowski, The Kozlowski Law Firm, Miami Beach, FL, Randall C. Marshall, American Civil Liberties Union Foundation of Florida, Inc., Miami, FL, for plaintiffs Steven Lofton, Douglas E. Houghton, Wayne Larue Smith, Daniel Skahen.

Christina A. Zawisza, Children First Project, Nova Southeastern University, Shepard Broad Law Center, Ft. Lauderdale, for plaintiffs John Doe and John Roe.

George H. Moss, Casey Walker, Moss, Henderson, Blanton et al., Vero Beach, FL, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT

KING, District Judge.

THIS CAUSE comes before the Court upon Defendants' Motion for Final Summary Judgment filed July 2, 2001. Child Plaintiffs filed a Response to Defendants' Motion for Final Summary Judgement on July 17, 2001. Adult Plaintiffs filed a Response to Defendants' Motion for Final Summary Judgment on July 18, 2001. No reply has been filed and the time to do so has passed. The Court heard oral arguments on Defendants' Motion for Final Summary Judgment and Plaintiffs' responses thereto on July 20, 2001. The issue before this Court is whether Florida Statute § 63.042(3)[1] ("homosexual adoption provision") which prohibits adoptions by homosexuals[2] impermissibly infringes on the Plaintiffs' federal constitutional right to privacy, intimate association and family integrity and violates the Due Process Clause as well as the Equal Protection Clause of the Constitution.

---

1. In 1977, Florida became the first state to statutorily ban adoption by gay or lesbian adults by enacting the homosexual adoption provision. Currently, it is the only state with such a prohibition. The homosexual adoption provision provides in pertinent part:

    63.042. Who may be adopted; who may adopt.

    \* \* \* \* \* \*

    (3) No person eligible to adopt under this statute may adopt if that person is a homosexual.

2. Plaintiffs have not challenged the homosexual adoption provision on the grounds of vagueness or over breadth. *See generally Cox v. Florida Department of Health and Rehabilitative Services,* 656 So.2d 902 (Fla.1995).

## I. PARTIES

### A. *Plaintiffs*

■ Plaintiff Steven Lofton ("Lofton") is a registered pediatric nurse and a certified long-term foster parent. He has raised three foster children, including child Plaintiff John Doe ("Doe"), since their infancy. All three of Lofton's foster children tested positive for HIV at birth. While the other two foster children developed AIDS, Doe successfully sero-converted during infancy and no longer tests positive for HIV. For the past ten years, Lofton has cared for his foster children full-time, administering their medications and looking after them when they were sick. For his efforts, he received the Outstanding Foster Parenting award from the Children's Home Society, a child placement agency licensed by Florida's predecessor agency to the Department of Children and Families ("DCF"). When Doe was freed for adoption in May 19, 1994, Lofton submitted an application with DCF in September of 1994 to adopt him. However, under the homosexual adoption provision, Lofton was automatically disqualified from adopting because he is a gay man.[3]

Plaintiff Douglas E. Houghton, Jr., ("Houghton") is a clinical nurse specialist and legal guardian of child Plaintiff John Roe[4] ("Roe"). Houghton has been Roe's caretaker since Roe's biological father, suffering from alcohol abuse and inconsistent employment, voluntarily left him with Houghton when Roe was four-years old. A few years after becoming Roe's legal guardian, Houghton decided to adopt him

3. In their Motion for Final Summary Judgment, Defendants argue for the first time that Plaintiff Lofton does not have standing to bring forth this action because his adoption application was rejected due to his failure to complete it and not due to his sexuality. Defendants state that he failed to indicate his sexuality on the adoption application, thereby rending it incomplete. However, throughout this case, Defendants have conceded that Lofton's application had been rejected because he is a homosexual. The correspondences between Defendants and Lofton clearly indicate that Defendants were well aware of Lofton's sexuality. (*See* Dep. of Steven Lofton, Ex. 1 to Defs.' Concise Statement at 151.) Furthermore, Defendants answered the Amended Complaint by stating that Lofton's application was denied "in the course of enforcing Fla. Stat. sec 63.042(3)." (Answer to Am. Compl. at ¶ 11.) Defendants' claim that Lofton was rejected because his application was incomplete and not because he is a gay man is disingenuous in light of the explicit language of their Answer and evidence in the record. The Court notes that admissions in pleading are deemed judicial admission, binding on the party who makes them, *see Missouri Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir.1990), even if the party offers post-pleading evidence which contradicts the admission, *see Ferguson v. Neighborhood Hous. Servs. of Cleveland, Inc.*, 780 F.2d 549, 550–51 (6th Cir.1986).

4. In their Motion for Final Summary Judgment, Defendants argue for the first time that Timothy Arcaro who represents minor Plaintiff Roe as next friend is not an appropriate representative for Roe, and that because Roe has is not adequately represented, his claims should be dismissed. Defendants allege that Arcaro lacks a relationship to the child, knowledge of the child, and expertise in child development to advance a colorable claim as Roe's next friend. Although the Court does not automatically grant the right to act as next friend to whomever seeks to pursue an action on behalf of another, *see Gonzalez v. Reno*, 86 F.Supp.2d 1167, 1184 (S.D.Fla. 2000), the Court finds that Arcaro satisfies the Eleventh Circuit's standard for determining next friend, *see Ford v. Haley*, 195 F.3d 603, 624 (11th Cir.1999). Specifically, child Plaintiff Roe is a real party in interest who because of his age is precluded from pursuing his own case and Arcaro, who has never put forth any monetary claim for damages on behalf of Roe that would suggest a self-serving motive, is sufficiently dedicated to his interests.

pursuant to Roe's biological father's decision to terminate his parental rights. Because Roe is not in DCF custody, Houghton must file an adoption petition in the Circuit Court for the Eleventh Judicial Circuit of and for Miami Dade County. However, Florida law requires that before filing an adoption petition with a State circuit court, Houghton must first receive a favorable preliminary home study evaluation. *See* FLA. STAT. § 63.112(2)(b). During his May 19, 2000, preliminary home study interview, Houghton was informed that but for his homosexuality and the homosexual adoption provision he would have received a favorable preliminary home study evaluation.[5] Thus, Houghton is precluded him from filing an adoption petition for Roe in the State circuit court.

Plaintiffs Wayne Larue Smith ("Smith") and Daniel Skahen [6] ("Skahen") became a licensed DCF family foster home after successfully completing a requisite 10 week course in January of 2000. Since then, they have cared for three foster children but none who have been freed for adoption. On or about May 1, 2000, Smith and Skahen submitted at-large adoption applications [7] with DCF District XI to serve as adoptive parents. As required on the adoption application, both Smith and Skahen indicated that they are gay men. On May 15, 2000, they received written notices from DCF stating that their adoption ap-

plications had been denied on the basis that the homosexual adoption provision prohibits gay men from adopting.

### B. *Defendants*

Defendants Kathleen A. Kearney ("Kearney") and Charles Auslander ("Auslander") have been sued in their official capacity as the individuals responsible for enforcing the homosexual adoption provision. Kearney is the Secretary of Florida's Department of Children and Families. She is responsible for the enforcement of the homosexual adoption provision in Florida. Auslander is the District Administrator of District XI of Florida's DCF. He is responsible for the enforcement of the homosexual adoption provision in Miami–Dade and Monroe Counties.

### II. PROCEDURAL HISTORY

The above-styled action was initiated on May 26, 1999, by the above named Plaintiffs along with Brenda and Gregory Bradley and Angela Gilmore. Brenda and Gregory Bradley alleged that they intended to designate a homosexual relative to be the guardian and eventual adoptive parent of their children in the event of their deaths. Angela Gilmore alleged that she is a lesbian who desired to be an adoptive parent but was automatically disqualified

---

**5.** The preliminary home study was conducted by Elizabeth Davies, MS, LMHC.

**6.** Defendants argue for the first time in their Motion for Final Summary Judgment that Smith, Skahen, Houghton and Roe do not have standing to bring forth their actions because at the time of filing the initial Complaint, they had not suffered any actual injury in fact to grant them standing. However, Defendants stated during the hearing on Defendants' Motion for Final Summary Judgment that they have withdrawn this argument in light of the Supreme Court's ruling in

*Mathews v. Diaz,* 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) (citations omitted), which held that Rule 15 of the Federal Rules of Civil Procedure allows pleadings to be amended to add post filing facts in order to cure a jurisdiction defect. *See id.* at 75, 96 S.Ct. 1883.

**7.** An at-large adoption application is not particular to any child. Currently, there are over 3,400 children in Florida awaiting adoption. (*See* Joint Pre–Trial Stipulation at 5.)

under the homosexual adoption provision. In its April 21, 2000, Order Granting in Part Defendants' Motion to Dismiss, the Court concluded that all Plaintiffs except for Lofton and Doe failed to establish an injury in fact that is both real and immediate. *See Lofton v. Kearney,* 93 F.Supp.2d 1343, 1348 (S.D.Fla.2000). Except for Lofton, none of the adult Plaintiffs had actually applied to become adoptive parents for any child nor had been denied the opportunity to adopt. *See id.* at 1346. Thus, the Court dismissed without prejudice the claims of these Plaintiffs for lack of standing.

On May 22, 2000, Plaintiffs filed their First Amended Complaint ("Amended Complaint"). In the Amended Complaint, Houghton indicated that since the Court's original dismissal, he had a preliminary home study conducted but was denied a favorable home study evaluation because of his sexuality. In addition, Smith and Skahen indicated that they had submitted adoption applications but had been rejected on the basis of their sexuality. The Amended Complaint also re-alleged the claims made previously by the Bradleys without any change in facts.[8] In its October 24, 2000, Order Granting in Part and Denying in Part Defendants' Motion to Dismiss First Amended Complaint, the Court declared that except for the Bradleys, Plaintiffs had established actual injury in fact sufficient to grant them standing to bring forth their claims. The Bradleys' claims were dismissed by the Court for the same reasons set forth in its April 21, 2000, Order. The Court declared that it would defer ruling on the merits of Plaintiffs' claims until summary judgment.

Plaintiffs' Amended Complaint alleges that the homosexual adoption provision violates the fundamental rights of Lofton, Houghton, Doe and Roe to familial privacy, intimate association and family integrity protected by the First Amendment and the Due Process Clause of the 14th Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983. According to Plaintiffs Lofton, Doe, Houghton and Roe, the homosexual adoption provision prohibits them from obtaining permanency in their relationships which creates uncertainty about the future integrity of their families and imposes a significant burden on the intimate, highly personal relationships between them. In addition, all Plaintiffs allege that by only prohibiting lesbians and gay men from adopting children, the homosexual adoption provision violates their rights to equal protection guaranteed by the 14th Amendment to the United States Constitution. Defendants move for summary judgment on all of Plaintiffs' claims.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted). The Court must view the evidence in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. If the movant meets this burden, the burden then shifts to the nonmoving party to establish

---

**8.** Angela Gilmore and her claims were omitted from the Amended Complaint.

that a genuine dispute of material fact exits. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir.1993). If the evidence relied on is such that a reasonable jury could return a verdict in favor of the nonmoving party, then the Court should refuse to grant summary judgment. *See id.* at 919. However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. If the evidence is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50, 106 S.Ct. 2505.

## IV. ANALYSIS

### A. *Fundamental Rights of Familial Privacy, Intimate Association and Family Integrity and the Due Process Clause*

Fundamental rights are those that are objectively "deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg,* 521 U.S. 702, 720–21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (citations omitted). In addition to those enumerated in the Bill of Rights, fundamental rights are implicit in the concept of ordered liberty such that neither liberty nor justice would exist if they were sacrificed. *See id.,* citing *Palko v. Connecticut,* 302 U.S. 319, 325–26, 58 S.Ct. 149, 82 L.Ed. 288 (1937) (citations omitted). Plaintiffs Houghton, Roe, Lofton and Doe allege that the homosexual adoption provision vi-

olates their fundamental rights to family privacy,[9] intimate association and family integrity as embodied in their alleged Constitutional right to the care, custody, and control of Doe and Roe. (*See* Amen. Compl. ¶¶ 74, 86; Adult Pls.' Resp. to Sum. J., at 14–15.) Plaintiffs emphasize that the United States Supreme Court has declared "the interest of a parent in the care, custody, and control of their children [to be] perhaps the oldest of the fundamental liberty interests ...." *Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (citations omitted). Although this liberty interest has principally been granted to blood relatives,[10] Plaintiffs assert that this right should be extended to foster family and legal guardian family units. According to Plaintiffs, the critical core of this liberty interest is the emotional bond that develops between family members as a result of shared daily life irrespective of the existence of a blood relationship. Furthermore, Plaintiffs assert that only by being allowed to adopt will they be able to protect their alleged rights.

As a threshold matter, the Court recognizes that a family can be established by more than mere biological ties. Family units are forged on the emotional attachments that derive from the intimacy of daily association as well as from blood relationships. The importance of a family to the individuals involved and to society is rooted in these emotional attachments. *See Smith v. Organization of Foster Families for Equality & Reform (OFFER),* 431

---

**9.** Plaintiffs do not assert a right of privacy to sexuality or sexual practice between adults.

**10.** *See e.g., Michael H. v. Gerald D.,* 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (citations omitted); *Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983) (citations omitted); *Caban v. Mo-*

*hammed,* 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979) (citations omitted); *Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978) (citations omitted); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (citations omitted).

U.S. 816, 844, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) (citations omitted). These emotional bonds may exist irrespective of the absence of biological ties. *See id.* This is especially true when wards have been placed in the homes of their caretakers since infancy or childhood and have been raised continuously by them without having ever significantly known their biological parents. *See id.* The Court does not doubt that the emotional ties between Lofton and Doe and between Houghton and Roe is quite close—as close as those between biological parents. Nor does the Court doubt that a deeply loving and interdependent relationship between Lofton and Doe and between Houghton and Roe exists. Therefore, there is no need for a trial, as Plaintiffs suggest, to show that intimate, highly personal parent-child relationships between Lofton and Doe and between Hougton and Roe have been forged.

■ However, the existence of strong emotional bonds between Plaintiffs does not inherently grant them a fundamental right to family privacy, intimate association and family integrity. The Court finds *Smith v. OFFER* to be instructive. In *Smith,* the United States Supreme Court reviewed the constitutionality of procedures by which New York State removed foster children from foster homes. In doing so, the Court considered whether the relationship between foster parent to foster child was sufficiently akin to the concept of family to warrant constitutional protection. While the *Smith* Court acknowledged that a parent-child relationship between an unrelated adult and child

might exist and might enjoy due process guarantees, the Supreme Court stopped short of identifying the foster parent-child relationship as one such relationship. *See id.* at 844. The *Smith* Court stated that unlike natural families, foster parents do not have a justifiable expectations of an enduring companionship because the emotional ties originate under state law. *See id.*

■ It is this justified expectation of enduring companionship that has become the benchmark for protected liberty interest in the family. Although the concept of family embraces relationships other than the archetypical nuclear family, the Constitution protects only those social units that share an expectation of continuity justified by the presence of certain basic elements traditionally recognized as characteristic of the family. *See Wooley v. City of Baton Rouge,* 211 F.3d 913, 921 (5th Cir.2000), citing *Smith,* 431 U.S. at 816, 97 S.Ct. 2094; *see also Drummond v. Fulton County Dept. of Family & Children's Services,* 563 F.2d 1200 (5th Cir.1977) (finding no liberty interest in a foster parent-child relationship that existed for more than two years). A biological connection between those asserting this type of protection generally satisfies this standard.[11] *See Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)(finding that a liberty interest existed in a relationship between biological father and son that the state can neither supply nor hinder); *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977)(holding that biological relatives

11. The Court notes that even a biological relationship between parent and child does not necessarily establish a protected liberty interest. *See Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983) (citations omitted); *Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978) (citations omitted); *Wooley v. City of Baton Rouge,* 211 F.3d 913 (5th Cir.2000).

draw together and participate in the duties and satisfactions of a common home); *Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974) (declaring that a biological relationship between parent and child brought the relationship within the ambit of the Fourteenth Amendment).

█ Here, the Court finds that Lofton's foster family relationship and Houghton's legal guardian relationship do not warrant justified expectations of family unit permanency. Foster families are grounded in state law and contractual arrangements. *See Smith,* 431 U.S. at 845, 97 S.Ct. 2094. Furthermore, foster care is typically a short term placement while the State seeks to find permanent placement in an adoptive home. Lofton entered into his foster care relationship with Doe implicitly aware of this given that he entered into his foster care relationship with Doe at the approval of the State. Similarly, Houghton entered into his legal guardian relationship with Roe with the implicit knowledge that it was not necessarily a permanent arrangement but one subject to the approval of the Florida state courts. In both cases, the State does not involve itself with natural family units that exist independent of its power, but ones directly created by it. The emotional connections between Lofton and Doe and between Houghton and Roe originate in arrangements in which DCF and the State have been partners from the outset. *See Smith,* 431 U.S. at 845, 97 S.Ct. 2094. Plaintiffs Lofton and Houghton entered into relationships to be a foster parent and legal guardian, respectively, with an inherent understanding that the relationships

they forged would not be immune from DCF and State oversight but permitted only upon their approval. Thus, while this Court recognizes the need, importance, and value of foster parent and legal guardian relationships, it cannot extend to those relationships the liberty interest granted to biological parents in the care, custody, and control of their children. Lofton, Doe, Houghton and Roe have no expectation of permanency and, therefore, no right to exclude the State from their family lives.

█ The Court cannot accept Plaintiffs' claim that the only means by which they can protect these alleged rights is to allow them to adopt. It is undisputed that there is no fundamental right to adopt, (*see* Joint Pre–Trial Stipulation at 10), nor is there a fundamental right to be adopted, (*see id.*).[12] Instead, adoption is a privilege created by statute and not by common law. *See id.; see also, In re Palmer's Adoption,* 129 Fla. 630, 176 So. 537 (1937); *Kyees v. County Department of Public Welfare of Tippecanoe County,* 600 F.2d 693 (7th Cir. 1979). It follows that given that there is no fundamental right to adopt or to be adopted, there can be no fundamental right to apply for adoption. The Supreme Court has warned against expanding fundamental rights because once a fundamental right is identified, the matter is placed "outside the arena of public debate and legislative action." *Glucksberg,* 521 U.S. at 720–21, 117 S.Ct. 2258. It is not for the courts to transform the liberties protected by the Due Process Clause into the public policy preferences of the Court. *Id.*

### B. *Equal Protection Clause*

The Equal Protection Clause of the Fourteenth Amendment to the Constitu-

---

**12.** Plaintiffs do not dispute that there is no privacy right to adopt a child, *see Lindley v. Sullivan,* 889 F.2d 124, 131 (7th Cir.1989), nor a fundamental liberty interest in adopting a child, *see Mullins v. State of Oregon,* 57 F.3d 789 (9th Cir.1995).

tion proclaims that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of laws." U.S. CONST. amend. XIV, § 1. However, classifications are not necessarily forbidden by the Equal Protection Clause. *See Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) (citations omitted). Instead, governmental decision makers are prohibited from treating differently individuals who are alike in all relevant respects. *See id.; Panama City Medical Diagnostic Ltd. v. Williams,* 13 F.3d 1541 (11th Cir.1994). When legislation or government policy discriminates between classes or deprives a group of a particular right, the level of scrutiny applied under an equal protection challenge turns on the nature of the group allegedly discriminated against. *See City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citations omitted). As a general rule, the governmental action in question will be upheld if the classification drawn by the statute is rationally related to a legitimate state interest. *See id.* Under this rational basis test, the statute is granted a strong presumption that it is reasonably related to a legitimate government interest, and, therefore, valid under equal protection analysis. *See id.; Lyng v. International Union,* 485 U.S. 360, 370, 108 S.Ct. 1184, 99 L.Ed.2d 380 (1988) (citations omitted). Where a statute targets a quasi-suspect class, namely those based upon gender or illegitimacy, a heightened level of scrutiny applies. *See id.* at 441, 108 S.Ct. 1184. Under this intermediate scrutiny test, the statute is presumed invalid unless it is substantially related to a sufficiently important governmental interest. *See id.* Where a statute targets a suspect class, including race, alienage, or national origin or burdens a fundamental right, the statute in question will only be sustained if it is narrowly tailored to serve a compelling state interest. *See id.* at 440, 108 S.Ct. 1184.

■ Plaintiffs assert that the homosexual adoption provision should be analyzed under the most exacting of equal protection scrutiny, or, at the least, under the intermediate scrutiny test. According to Plaintiffs, homosexuals warrant protection as a suspect class because the homosexual adoption provision violates their fundamental rights. Furthermore, they assert that any classification which disadvantages lesbians and gay men is inherently suspect. This Court has already determined that foster parents and legal guardians do not possess any fundamental right to familial privacy, intimate association and family integrity. Nor is there any fundamental right to adopt, be adopted, or apply for adoption. Thus, the homosexual adoption provision does not tread upon any of Plaintiffs' asserted fundamental rights.

The more difficult question for this Court is whether homosexuals constitute a suspect or quasi-suspect class for the purpose of equal protection analysis. In *Romer v. Evans,* 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996), the Supreme Court suggested that they do not. The *Romer* Court invalidated an amendment to the Colorado state constitution which prohibited all governmental action designed to protect homosexuals from discrimination. In doing so, the *Romer* Court applied the rational basis test in analyzing the equal protection challenge to the state constitutional amendment.[13] Justice Scalia noted in his dissent that the *Romer* Court deter-

---

**13.** In that case, the trial court had rejected

the argument that homosexuals constitute a

mined "rational basis—the normal test for compliance with the Equal Protection Clause—[to be] the governing standard" in such cases. *Id.* at 620 n. 1, 116 S.Ct. 1620 (Scalia, J., dissenting).

Although the Eleventh Circuit has yet to weigh in on this particular issue, several other circuits which have examined whether homosexuals should be granted this heightened level of scrutiny and have declined to do so. These circuits have clearly declared that while homosexuals are protected by the Equal Protection Clause, government action classifying individuals on the basis of homosexuality or homosexual conduct must be analyzed under the rational basis test.[14] This Court is unaware of and Plaintiffs have failed to cite any cases where a heightened level of scrutiny has been applied in determining the constitutionality of classifications targeting homosexuals.[15] Thus, in light of *Romer* and the abundance of case law on point, this Court shall evaluate Plaintiffs' equal protection challenge to the homosexual adoption provision under the rational basis test.[16] Accordingly, the homosexual adoption provision shall be granted the presumption that it is rationally related to a legitimate state interest and the burden shall be on Plaintiffs to negate every con-

ceivable basis which might support it. *See F.C.C v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) (citations omitted).

■ Defendants argue that the homosexual adoption provision serves two legitimate purposes. The first is that it reflects the State's moral disapproval of homosexuality consistent with the legislatures right to legislate public morality. According to Defendants, homosexuality has been long disfavored in the law based on beliefs firmly rooted in Judeo–Christian moral and ethical standards for a millennia. (*See* Defs.' Mot. Sum. J. at 17.) Defendants assert that the legislature is obligated to require adoptive parents to educate children regarding their religious heritage and promote this cultural and moral heritage by actively practicing it. (*See id.*) However, this Court finds that public morality alone is insufficient to justify the homosexual adoption provision. Enacting a classification to express society's disapproval of a group burdened by the law is precisely what the Equal Protection Clause does not allow. *See Romer*, 517 U.S. at 633, 116 S.Ct. 1620. That is not to say that the government cannot legislate to achieve things which it believes is morally good,

**14.** *See e.g. Thomasson v. Perry*, 80 F.3d 915, 928 (4th Cir.1996); *Town of Ball v. Rapides Parish Police Jury*, 746 F.2d 1049 (5th Cir. 1984); *Equality Foundation of Greater Cincinnati, Inc. v. Cincinnati*, 128 F.3d 289 (6th Cir.1997); *Ben–Shalom v. Marsh*, 881 F.2d 454 (7th Cir.1989); *Richenberg v. Perry*, 97 F.3d 256 (8th Cir.1996); *Holmes v. California Army National Guard*, 124 F.3d 1126 (9th Cir.1997); *Rich v. Secretary of the Army*, 735 F.2d 1220 (10th Cir.1984); *Steffan v. Perry*, 41 F.3d 677 (D.C.Cir.1994); *Woodward v. U.S.*, 871 F.2d 1068 (Fed.Cir.1989).

**15.** Although a panel of judges from the Ninth Circuit Court of Appeals in *Watkins v. United*

*States Army*, 847 F.2d 1329, 1349 (9th Cir. 1988), held that homosexuals were a suspect class, that opinion was withdrawn upon review by the full court, *see Watkins v. United States Army*, 875 F.2d 699 (1989). The full court eventually resolved the issues without reaching the equal protection challenge. *See id.*

**16.** Plaintiffs have offered no evidence in their response to Defendants' Motion for Final Summary Judgment that raises a material issue of fact as to whether homosexuals are entitled to a higher level of scrutiny.

see Berman v. Parker, 348 U.S. 26, 32–33, 75 S.Ct. 98, 99 L.Ed. 27 (1954) (citations omitted); it is to say that the government cannot merely justify singling out a group of citizens for disfavor simply because it morally disapproves of them. Thus, the Court cannot accept that moral disapproval of homosexuals or homosexuality serves a legitimate state interest.

■■ The second interest asserted by Defendants is that the homosexual adoption provision serves the best interest of Florida's children. According to Defendants, a child's best interest is to be raised in a home stabilized by marriage, in a family consisting of both a mother and a father. DCF regulations state that families in which there is a mother and a father are considered important for the well-rounded growth and development of the child. See F.A.C. 65C–16.005(6)(f)(1). Primary consideration is given to couples who have been married a sufficient length of time to establish stability so that even couples married less than two years are scrutinized particularly carefully. See id. Moreover, heterosexual unmarried couples living together in a sexually cohabitating relationship will not be considered by DCF as joint adoptive parents. See id. According to Defendants, married heterosexual family units provide adopted children with proper gender role modeling and minimize social stigmatization.

Plaintiffs concede that categorically barring homosexuals from adoption in the best interest of Florida's children is on its face a legitimate purpose. (See Pls.' Resp. Mot. Sum. J. at 5). However, they suggest that this stated interest is merely a pretext for discrimination against homo-

sexuals. (See id. at 5 n. 3). Plaintiffs wish to prove at trial that animus towards homosexuals underlie the State's true purpose in preventing homosexuals from adopting. However, as a matter of law, it is unnecessary and improper for this Court to determine whether the conceived reason for the challenged distinction actually motivated the legislature. See Beach Communications, Inc., 508 U.S. at 315, 113 S.Ct. 2096; Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir.1995); Panama City Medical Diagnostic Ltd., 13 F.3d at 1547. It is enough for the legislation to be supported by plausible or hypothesized reasons. See U.S. Railroad Retirement Bd. v. Fritz, 449 U.S. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980) (citations omitted). Whether this reasoning in fact underlay the legislative decision is irrelevant. See id. (quoting Flemming v. Nestor, 363 U.S. 603, 612, 80 S.Ct. 1367, 4 L.Ed.2d 1435(1960)).

Plaintiffs did not object to nor disagree with Defendants' statements that married heterosexual families provide children with a more stable home environment, proper gender identification, and less social stigmatization than homosexual homes in their memorandum or during oral arguments. Plaintiffs have not asserted that they can demonstrate that homosexual families are equivalently stable, are able to provide proper gender identification, or are no more socially stigmatizing than married heterosexual families. It is Plaintiffs' burden as the one attacking the homosexual adoption provision to negate every conceivable basis which might support it. Plaintiffs have chosen not to do so [17] and, thus, have left unchallenged Defendants' asser-

---

**17.** Plaintiffs stated during the hearing on Defendants' Motion for Final Summary Judgment that they do not see the need to get into an expert discussion on these issues because even granting Defendants these facts, Defen-

tion that the best interest of the child is to be raised by a married family.

It is unnecessary for this Court to evaluate whether Defendants' statements are correct. Under the rational basis test, the government has no obligation to produce evidence to sustain the rationality of a statutory classification. *See Panama City Medical Diagnostic Ltd.,* 13 F.3d at 1547 (quoting *Beach Communications, Inc.*) Even if the assumptions underlying the rationales are erroneous, "the very fact that they are 'arguable' is sufficient, on rational basis review, to 'immuniz[e]' the congressional choice from constitutional challenge." *Beach Communications, Inc.,* 508 U .S. at 320, 113 S.Ct. 2096. At the least, it is "arguable" that placing children in married homes is in the best interest of Florida's children for the reasons stated by Defendants. Thus, because Plaintiffs have neither satisfied their burden of negating the reasons offered by Defendants to justify the homosexual adoption provision nor raised material issues of fact with respect to Defendants' asserted legitimate interest and the fact that the homosexual adoption provision is granted the presumption of constitutionality, the Court must find Defendants' purported legitimate interest in excluding homosexuals from adopting—namely, placing adopted children in married homes—to be valid.

Instead of challenging the rationality of the homosexual adoption provision, Plaintiffs argue that Defendants have not satisfied *City of Cleburne*'s threshold requirement that they demonstrate that homosexuals pose a unique threat to chil-

dren that others similarly situated in relevant respects such as single parents [18] do not. However, the Court finds Plaintiffs' reading of *City of Cleburne* to be an unwarranted interpretation of it. In *City of Cleburne,* the Supreme Court found under the rational basis test a municipal zoning ordinance requiring a group home for the mentally retarded to obtain a special use permit and the denial of the home's subsequent application for the permit to be unconstitutional. 473 U.S. at 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citations omitted). The municipality argued that it had a legitimate interest in (1) protecting the residents of the home from a nearby flood plain, (2) limiting potential liability for acts of residents of the home, (3) maintaining low density land uses in the neighborhood, (4) reducing congestion in neighborhood streets and (5) avoiding fire hazards. However, the Supreme Court declared that the municipality failed to distinguish how these concerns applied particularly to mentally retarded residents of the home and not to a number of persons who could freely occupy the identical structure without a permit, such as boarding houses, fraternity houses, and nursing homes. *See id.* at 450, 105 S.Ct. 3249. It concluded that the municipality's purported justifications for the ordinance made no sense in light of how it treated other groups similarly situated in all relevant respects. *See Board of Trustees of the University of Alabama v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 963 n. 4, 148 L.Ed.2d 866 (2001) (citations omitted) (interpreting the holding of *City of Cleburne* ). As a

---

dants still have not justified their classification under *City of Cleburne.*

**18.** Plaintiffs also point to the fact that substance abusers and perpetrators of domestic

violence in addition to single parents are not categorically excluded from adopting under Florida law.

result, the Supreme Court was left to declare that the law "rest[ed] on an irrational prejudice against the mentally retarded ...." *City of Cleburne*, 473 U.S. at 450, 105 S.Ct. 3249.

Plaintiffs have overstated the Supreme Court's holding in *City of Cleburne* by asserting that the ruling places a burden on Defendants to show that homosexuals pose a greater threat than other nonmarried adults who are allowed to adopt. The Supreme Court in *City of Cleburne* merely reasserted that under the rational basis test a statute which discriminates against a particular group must be rationally related to the asserted legitimate purpose. In *City of Cleburne*, the Supreme Court found that it was not. In particular, it found that the targeted group was similarly situated as other groups. The case at hand is distinguishable from *City of Cleburne*. Homosexuals are not similar in all relevant aspects to other nonmarried adults with respect to Defendants' purported best interest of the child. Nonmarried adults, unlike homosexuals, can get married. On the other hand, homosexuals cannot marry or be recognized as a marital unit [19] and, thus, cannot meet this State's asserted interest underlying the homosexual adoption provision.

The Court notes that the Equal Protection Clause of the Fourteenth Amendment is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. *See Beach Communications, Inc.*, 508 U.S. at 313, 113 S.Ct. 2096. "In areas of social ... policy, a statutory clas-

sification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.; see also, Sullivan v. Stroop*, 496 U.S. 478, 485, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990) (citations omitted); *Bowen v. Gilliard*, 483 U.S. 587, 600–03, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987); *Dandridge v. Williams*, 397 U.S. 471, 484–85, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Where there is a plausible reason for the State's action, this Court's inquiry must end. *See id.*

## V.  CONCLUSION

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendants' Motion for Final Summary Judgment be, and the same is hereby, GRANTED.

---

19. The Federal and Florida's Defense of Marriage Act precludes homosexuals who marry in other states from being recognized by Flor-

ida as a legal union. *See* 1 U.S.C. § 7 (West 1997); FLA. STAT. § 741.212 (1997).